NEW-YORK,
May, 1836.

Porter
v.
M'Clure.

PORTER *vs.* M'CLURE & TOURTELLOT.

A promise by a party to pay *all he owes* to another, accompanied by an ex
press *denial* that he owes, or is under a legal liability to pay any thing, will
not support an action.
Where two persons are jointly concerned in the building of a mill, the prom-
ise of *one* to pay for advances made will not bind the *other*. The community
of interest does not create them *partners;* to constitute them such, there
must be an agreement ultimately to share in the profit and loss.

THIS was an action of assumpsit, tried at the Steuben cir-
cuit in November, 1833, before the Hon. ROBERT MONELL,
one of the circuit judges.

The following are the facts of this case. In the spring of
1832, the plaintiff and Tourtellot, one of the defendants, were
partners, carrying on mercantile business, under the name of
*Edward L. Porter & Co.,* at *Hammonds-port,* in the county of
Steuben, where the business was conducted by Tourtellot; the
plaintiff residing at Ithaca. In June of that year, Tourtellot
and M'Clure entered into a contract with John G. Taylor and
Nathan Taylor, by which the latter agreed to build a saw-mill
for Tourtellot and M'Clure, for the sum of $800, to be paid as
follows: $700 in store goods, and $100 in cash; the payments
to be made as the work progressed. Goods were accordingly
advanced by Tourtellot, from the store of E. L. Porter & Co.,
to the amount of $600, which were entered upon the books of
E. L. Porter & Co., under an account headed *Nathan Taylor.*
M'Clure knew at the time that these goods were advanced to
the Messrs. Taylors, on account of the contract with them,
and assented to the advances thus made. In October, 1832,
the partnership between the plaintiff and Tourtellot was dis-
solved: Tourtellot executed to the plaintiff an assignment of
his interest in the goods on hand, and in the notes and ac-
counts due the firm; and the plaintiff executed writings to
Tourtellot, certifying a balance in his favor of $380, which he
promised to pay in three months, and engaged to pay all de-
mands due from the firm, and indemnify Tourtellot against
all liabilities. After the execution of the writings, the plain-

tiff spoke to Tourtellot respecting the *account on the books against Nathan Taylor*, and observed, " I suppose you and the general, (meaning M'Clure) will see this account of Taylor settled," to which Tourtellot answered, that *he* would, or that *they* would : which expression was used the witness could not recollect. M'Clure was not present at this conversation. Some time afterwards M'Clure told the plaintiff that he and Tourtellot would pay to the plaintiff all they owed the Taylors ; that the Taylors had failed to fulfil their agreement, and denied being under any legal liability to pay them any thing. He said their work would come to about $600, and offered to submit to men to determine what he owed to the Taylors, and would pay it to the plaintiff. The grounds upon which M'Clure denied his liability to pay the Taylors, were, that the work was not done by the *time* and in the *manner* agreed upon, and that the frame of the saw-mill was insufficient. The declaration contains a special count, setting forth the partnership between the plaintiff and Tourtellot ; that Tourtellot, while such partnership continued, entered into a *copartnership* and connexion with M'Clure, *in the building and erecting of divers saw-mills and grist-mills, and other hydraulic businesses and affairs*, and that in the prosecution of their business Tourtellot and M'Clure employed Nathan Taylor and John G. Taylor to do certain work for them in and about their business, who accordingly did the same, to the amount of $1000; and that for the purpose of paying them, Tourtellot sold and delivered them goods out of the store of E.L. Porter & Co., to the amount of $1000. The declaration then, after stating the dissolution of the partnership between the plaintiff and Tourtellot, and the assignment by the latter of his interest in the goods and accounts of the late firm of E. L. Porter & Co. sets forth a *promise of the defendants* to pay to the plaintiff the money advanced by Tourtellot to the Messrs. Taylors, and concludes with the usual breach. The declaration also contains the common counts for goods sold and delivered by the plaintiff *to the defendants*. When the plaintiff closed his evidence, the defendants' counsel raised various objections to a recovery, and among other grounds, particularly insisted up-

on *variances* between the declaration and proof ; all of which were overruled by the judge, under whose instructions the jury found a verdict for the plaintiff for $611, being the amount claimed by the plaintiff, with the interest thereof. The defendants, on a case made, asked for a new trial.

*S. Stevens,* for the defendants.

*Z. A. Leland,* for the plaintiff.

*By the Court,* BRONSON, J. If there was no variance between the declaration and the evidence, and the case was fully made out on the trial, I think the plaintiff was entitled to recover, and that the verdict in his favor should not be disturbed. If the defendant, Tourtellot, had not been a partner of the plaintiff at the time the goods were sold, there can be no doubt that Porter & Co. could have recovered against the defendants in an action for goods sold and delivered, whether there had been any new promise or not. It appears from the case that although the goods were, as a matter of convenience, charged to Nathan Taylor, the credit was neither given to him nor his associate in the contract, but to the defendants. It was a sale of goods to the defendants, with a delivery by their direction to a third person. In such a case the count may state generally a sale and delivery of the goods to the defendants, for that is the legal effect of the transaction. *Bull v. Sibbs,* 8 *T. R.* 327, 8. 1 *Chit. Pl.* 339. *Lawes on Pl. in Assump.* 451, 466. But as the defendant Tourtellot was the partner of Porter at the time the debt was contracted, the action would necessarily have to be brought in both of their names, and this would involve the absurdity of making one man both plaintiff and defendant on the same record. *Mainwaring v. Newman,* 2 *Bos. & Pul.* 120. Although Tourtellot had assigned his interest in the debt to the plaintiff, the action must still be brought in the name of the original parties. 1 *Chit. Pl.* 10. If the debt to Porter & Co. had been secured to them by a negotiable instrument, they might have indorsed, and made it payable to Porter alone. *Russell v Swan,* 16 *Mass. R.* 314. But such was not the case, and the

plaintiff, to maintain the action in his own name alone, was consequently obliged to resort to a *new promise* made to him after the assignment.

Assuming that the declaration is in the proper form, and that the prior indebtedness and the assignment to the plaintiff, would constitute a good consideration for an undertaking by the defendants to pay the debt to the plaintiff, still the plaintiff could not maintain the action without proving that a new promise was in fact made by *both* of the defendants. It is not a case where the law will imply a promise, and if none has been made, the plaintiff has not resorted to the right forum for redress. I think a promise by Tourtellot was sufficiently proved. The clerk of Porter & Co. swears, that at the time of the dissolution, and after the papers had been executed, the plaintiff spoke of the account on the books against Nathan Taylor; and, addressing Tourtellot, said: "I suppose you and the general will see this account of Taylor settled," and that Tourtellot replied, "I will," or "we will," the witness could not recollect which; he understood that both were to pay, as that was the original understanding. The defendant M'Clure was not present at this time, but a subsequent conversation between him and the plaintiff was proved, in which he said they would pay to the plaintiff all they owed the Taylors; that the Taylors had failed to fulfil their agreement, and he denied being under any legal liability to pay them any thing. He said their work would come to about $600; but repeated his denial of any legal liability to pay them any thing, and offered to submit to men to decide what he owed the Taylors, and would pay it to the plaintiff; again protesting that he owed them nothing. The grounds upon which M'Clure denied his liability to pay the Taylors were, that the work was not done by the time they agreed to do it; that it was not done in the manner agreed upon, and that the frame was insufficient. This is all the evidence that was given on this point in relation to M'Clure, and, in my judgment, it does not make out a new promise on his part. He said they would pay the plaintiff all they owed the Taylors, but accompanied it with an express denial that they owed, or were under a legal liability to pay any thing. It is impossible to say that this

amounted to a promise to pay the $600 to the plaintiff.  In

*Lawrence* v. *Hopkins,* 13 *Johns. R.* 288, the defence was the
statute of limitations.   The defendant did not deny having
made the contract, but said he never considered himself liable
to pay any thing ; that it was an unjust debt.   The court
said, that to infer a promise to pay, in direct opposition to the
defendant's denial of the justice and fairness of the debt, would
be trifling with the statute.   It is no answer to this objection
to say, that M'Clure, having ordered the goods from Porter
& Co., was under a legal as well as moral obligation to pay
for them.   That does not touch the question.   The point is,
whether Porter, suing alone, can recover ; and it is admitted
that he cannot, without a new promise.   The defendants did
not contract with him ; and however unjust it may be in
M'Clure to refuse payment, or a promise of payment, to the
plaintiff, this action cannot be maintained without overturn-
ing well established principles of law.

    To obviate this objection, it has been argued, on the part of
the plaintiff, that the defendants were *partners,* and that the
promise made by Tourtellot was consequently obligatory upon
both ; but there is no evidence in the case to show that they
were partners.   The declaration avers that the defendants
were copartners in the building and erecting of divers saw-
mills, grist-mills, and other hydraulic works, and that in the
prosecution of their copartnership business, they employed the
Taylors to build the saw-mill which has been mentioned ;
but the proof does not sustain the allegation.   It was conced-
ed on the argument, that the evidence did not show a gene-
ral partnership in the business of building mills, as the declara-
tion alleges ; but it was contended that there was a special or
limited partnership in relation to the mill erected by the Tay-
lors, and the case of *Cumpston* v. *M'Nair,* 1 *Wendell,* 457, was
cited in support of this position.   In that case, Drake & Wheeler
were joint owners of certain personal property, (a quantity of
salt) which Drake, with the assent of Wheeler, took to market,
under an agreement between them that every thing should be
done to forward the business, and that the property should be
turned into money, and be applied to the satisfaction of their
joint debt.   The salt was marked with the initials of both

their names. A third person advanced money to Drake to pay the duties on the salt, and also transported the property to the place of sale in Pennsylvania, and for his money and services Drake gave him a note signed *Drake & Wheeler ;* and when this fact was afterwards reported to Wheeler, he made no objections. The court held that there was a limited partnership between Drake and Wheeler, in the particular transaction in relation to which the note was given ; that there was a joint purchase for a particular adventure, upon an agreement to share jointly in the ultimate profit and loss. But in the case before the court, there was no joint purchase for a particular adventure—no agreement to share ultimately in the profit and loss. The defendants entered into a joint contract with the two Taylors, and were bound to perform it on their part—not however on the ground that they were partners, but on the ground of an express joint undertaking ; and whatever were their obligations to the builders, it would not make them partners in relation to other persons. They were also answerable to Porter & Co. for the goods ; not because they were partners, but because they both ordered the delivery. There is nothing from which a partnership between the defendants can be inferred, but the single fact that they entered into a contract on the one part, and the two Taylors on the other, by which the Taylors were to build a saw-mill for them at Hammondsport, and the defendants were to pay them $860 for doing it. The only fair inference which can be deduced from this fact is, that the defendants, as tenants in common or otherwise, were the owners of a mill site, on which they intended to erect a mill ; and they made a contract with the proper mechanics for that purpose. The mill, when completed, like the site which it occupied, would be real estate, and the defendants would hold it by the same tenure as that by which they held the land. Whatever that tenure might be, it would not constitute them partners ; they might or might not become partners in carrying on milling business. A community of interest in land does not make men partners, nor does a mere community of interest in personal property. There must be some joint adventure, and an agreement to share in the profit and loss of the undertaking. The plaintiff

should have furnished proof, instead of argument, to show the NEW-YORK, partnership. In *Post* v. *Kimberly*, 9 *Johns.R.* 503, Kent, Ch. May, 1836. J., remarked, that " the parties had no previous partnership Clark or previous connection with each other in trade, and we are v. to make no intendment in favor of the partnership, so as to Vorce. supply the absence of facts." In the same case, Spencer, J. (p. 496) says, " To constitute a partnership in a particular purchase, or in a single concern, there must either be a joint undertaking to pay, or an agreement to share in the profits and loss." He was speaking of a trading adventure in personal property. " A joint undertaking to pay " had no particular bearing upon the case, and I think it may be doubted whether that branch of his remark was strictly accurate. Where two or more persons are partners, the promise of one binds the whole ; but where two or more persons enter into a joint contract to pay or do any other act, the liability of the parties does not rest on the notion of a partnership between them, but results from their express agreement. The case of *Ballou* v. *Spencer*, 4 *Cowen*, 163, is in several respects, much like the one before the court, and is a decisive authority in favor of the defendants.

New trial granted.