# WHEELING.

## SODIKER *v.* APPLEGATE.

### Submitted June 5, 1884—Decided July 5, 1884.

1. To constitute a partnership between parties who share in the profits, the interest in the profits must be mutual—each person

must have a specific interest in them as a principal trader; he is not a partner merely because he receives a part of the profits as compensation for his services. (p. 415.)

2. In every partnership there is a community of interest, but every community of interest does not create a partnership. In all cases of partnerships there must be a participation as principal. If the persons merely occupy the relation of principal and agent, or employer and employe, no partnership can be predicated upon the fact that such agent or employe receives a share of the profits for his services or other benefits conferred. (p. 415.)

3. A. employed B. to run and operate his grist-mill and agreed that for his services B. should have one half the tolls or profits derived from the mill; this did not create a partnership between A. and B. The agreement that B. should receive a share of the profits was simply a mode of payment and measure of his compensation.

The facts of the case are stated in the opinion of the Court.

*G. W. Caldwell* for appellant.

*J. C. Wright* for appellee.

SNYDER, JUDGE:

Suit in equity brought by William Sodiker against Lewis Applegate in June, 1879, in the circuit court of Brooke county to settle the accounts of an alleged partnership between the plaintiff and defendant for running a grist and flour mill, buying and selling grain and the products of said mill. The bill avers that by the terms of the partnership the defendant was to furnish the grist-mill then owned by him and put the same in repair at his own expense, the plaintiff was to run and operate the mill, the funds for carrying on the business and keeping the mill in repair was to be furnished by the parties in equal portions and the profits were to be shared equally between them.

The defendant in his answer positively denies that any partnership of any kind existed between him and the plaintiff; he avers that while the plaintiff worked at his mill he did so as a hired hand, being without means and penniless he was employed to run the mill so long as he might do so satisfactorily to the defendant and the customers of the mill. The cause was referred to a commissioner for an account,

depositions taken and the commissioner reported that in his opinion no partnership existed,.but, if the court should decide that the proofs established a partnership, he reported due to the plaintiff one hundred and twenty-six dollars and eighty-seven cents.

The plaintiff excepted to that part of the report which found that no partnership existed and the court by its decree of June 14, 1883, sustained said exception and decreed that the plaintiff recover from the defendant the said sum of one hundred and twenty-six dollars and eighty-seven cents and costs.   From this decree the defendant appealed.

As I am clearly of opinion that no partnership existed between the plaintiff and defendant, it is only necessary to refer to the evidence in relation to that matter.   The plaintiff in his deposition, after stating the terms of the partnership as alleged in his bill says: "I did grind the wheat I bought with my own money and sold the flour on my own account and got the money.   The wheat that Lewis Applegate bought I ground, took the toll from, and Applegate sold the flour on his own account.   All the other grain that came into the mill was disposed of in the same way."   He exhibits with his deposition, and testifies to their correctness, certain accounts for work done by him and for bills paid for repairs to the mill, for boarding hands and for money paid for wheat, all of which are made out in his name against the defendant.   The one half of these accounts is what constitutes the sum found by the commissioner and on which the decree against the defendant is based.   There are no credits on any of these accounts and no charges of any kind in favor of the defendant.   Nothing appears as to the business of the alleged partnership.   No charges in favor or against it.   In fact there is not in the evidence or the accounts filed anything having any relation to the affairs of any partnership or anything to show that any partnership business was done from which any profits or losses could have arisen.   If any partnership existed the facts altogether fail to show it.   The accounts filed and relied on by the plaintiff are simply charges alleged to be due to him individually from the defendant.   They are made out not against any firm but against the defendant personally.   They,

therefore, disclose on their face that the plaintiff did not regard them as partnership accounts, but merely as items due to him from the defendant for work done, money paid, &c., for the use of the defendant as an individual. For these claims, if they are just, the plaintiff has a plain and adequate remedy by action of *assumpsit* at law.

The plaintiff was the person who had charge of the business and, if there was any partnership, he was the partner to render an account and not the defendant. But instead of doing so he brings his suit based exclusively on private charges in his favor against the defendant. There are no allegations or proofs anywhere in the record that there are any assets or debts belonging to or due from the alleged partnership. If there were any assets or profits they ought to be in the hands of the plaintiff as the acting partner, and, therefore, cause for a suit might exist against him for an account, but it is difficult to conceive why he should have occasion to sue the defendant, who had nothing to do with the management of the alleged partnership. If the accounts and transactions disclosed in this record constitute a partnership and entitle the plaintiff to maintain this suit, then not only would every employe be a partner of his employer but every person who had a private account against another could sue his debtor as a partner in a court of equity and recover.

It is apparent from the evidence in this cause that no partnership existed. The only agreement between the plaintiff and defendant is stated by the plaintiff when he says: "My agreement was, Mr. Applegate was to furnish me a house to live in and I was to have the half. It was to be half and half between us. Inside repairs of the mill were to be done by me, and half of the expenses to be paid by each. Outside repairs to be paid by Lewis Applegate; was no agreement by us as to losses."

The evident meaning of this language as shown by the other testimony and facts is, that the plaintiff was employed by the defendant to take charge of his mill as miller, and for his services in that behalf the plaintiff was to receive one half the tolls or earnings of the mill. The half of the earnings or profits to which the plaintiff thus became entitled did

not make him a partner. This merely constituted the manner of payment and the measure of his compensation for his service as miller.

To constitute a partnership between the parties who share in the profits, the interest in the profits must be mutual; that is, each person must have a specific interest in the profits as a principal trader; he is not a partner if he merely receives out of the profits a compensation for his services as an agent, employe or servant—Collyer on Part. § 31. Thus, where A. purchased goods for an adventure on the credit of B., and it was agreed, "that, if any profits should arise from them, B. should have one half for his trouble, it was held that this was not a partnership between the parties"—*Hesketh* v. *Blanchard*, 4 East. 144. In all cases there must be a participation as principal. If the persons merely occupy the relation of principal and agent, employer or employe or factor, no partnership can be predicated upon the fact that such agent, employe or factor receives a part or share of the profits for his services or other benefits conferred. This proposition is illustrated by numerous cases, among which are the following: *Berthold* v. *Goldsmith*, 24 How. 542; *Barckle* v. *Eckhart*, 1 Den. 341; *Bowyer* v. *Anderson*, 2 Leigh 550; *Chapline* v. *Conant*, 3 W. Va. 507; *Dils* v. *Bridge*, 23 Id. 20; *Hanna* v. *Flint*, 14 Cal. 73; *Morgan* v. *Stearnes*, 41 Vt. 397.

In every partnership there is a community of interest, but every community of interest does not create a partnership. There must be a joint ownership of the partnership funds, or a joint right of control over them and also an agreement to share the profits and losses arising therefrom. Thus an agreement between A. and B. that A. shall work B.'s farm upon shares and divide the produce does not constitute them partners *inter sese* or as to third persons—*Putnam* v. *Wise*, 1 Hill 234. Nor are the owners of real estate who contract with mechanics to build a mill or other building upon their land partners *inter sese*, but either party paying more than his share of the expense of the construction, may recover such excess of the other owner in *assumpsit*—*Porter* v. *McClure*, 15 Wend. 187.

It is unnecessary to illustrate further what particular facts and agreements do or do not constitute a partnership. The

books are full of nice distinctions and definitions showing that it is often difficult to decide to which class the particular facts and circumstances assign cases. In the case before us, however, there is no such difficulty. Under none of the authorities or definitions could this be classed as a partnership.

I am, therefore, of opinion that the decree complained of must be reversed with costs to the appellant and the plaintiff's bill dismissed with costs.

Reversed.