# WHEELING

TOWNLEY BROS. *r.* CRICKENBERGER *et als.*

Submitted January 16, 1908.    Decided June 10, 1908.

1. PARTNERSHIP—*How Constituted.*

A partnership, in relation to strangers, (creditors), is constituted, (1) By participating in the profits; (2) Without such participating, by lending one's name to the concern. (p. 385.)

2. SAME.

A partnership, so far as third parties, creditors for example, are concerned, may exist without any contract between the parties forming the partnership and contrary to the intention of the parties. (p. 385.)

3. SYLLABI APPROVED.

Syllabus, Point 4, *Handy* v. *Scott*, 26 W. Va. 710, and Point 7 of Syllabus. *Boyd* v. *Gunnison*, 14 *Id.* 1, approved and applied. (p. 387.)

4. AFFIDAVIT—*Final Decree.*
   Affidavits, in no way a part of the record, as to what occurred at the time of, or before or after, the entering of a final decree, appealed from, for the purpose of impeaching the same, cannot be considered by Appellate Court.   (p. 388.)

5. APPELLATE COURT—*Record.*
   To be considered in the Appellate Court the matter should be raised by motion in the court below and made part of the record. The Appellate Court cannot look beyond the record as it is made in the lower court.   (p. 388.)

Appeal from Circuit Court, Greenbrier County.

Bill by W. W. Townley and others against J. W. Crickenberger and others.   Judgment for defendants and plaintiffs appeal.

*Affirmed.*

JOHN W. ARBUCKLE, H. L. VAN SICKLER and J. L. MARSHALL, JR.. for appellants.

WILLIAMS & DICE, and HENRY GILMER, for appellees.

MCWHORTER, JUDGE:

This is a suit in equity brought by W. W. Townley, L. L. Townley, J. J. Townley, W. D. Townley and E. R. Townley, partners doing business under the firm name of Townley Brothers, against J. W. Crickenberger and some twenty others in the circuit court of Greenbrier county.

In March, 1903, a store known as "The Racket" was started in Lewisburg, Greenbrier county, doing a general merchandise business with J. W. Crickenberger as manager. Townley Brothers were doing a general merchandise business in Ronceverte, said county.   Previous to the opening of the Racket the following contract was entered into and signed by Townley Brothers and J. W. Crickenberger for the Racket:

"This Memorandum Contract made and entered into this the 18th day of March 1903, Between J. W. Crickenberger and N. W. Russell copartners of Lewisburg, W. Va., to do business under the firms name 'The Racket' of the one part and Townley Bros. of Ronceverte, W. Va., of the other part.

"WITNESSETH, That for and in consideration that J. W. Crickenberger and N. W. Russell of the one part does put into the business in merchandise and Cash $300 to $500,—

"The said Townley Bros. has agreed to furnish them goods to sell.   The entire stock contained in house of said business

is owned by Townley Bros. until settlement is made, which must be weekly. Should settlement not be made on goods each week what they might have belonging to the said Townley Bros. and is to be sold by them. All goods are to be sold for cash only by them J. W. Crickenberger and N. W. Russell. The said Townley Bros. are to have half profits made on goods furnished by them, and there is to be no expense on Townley Bros. in no way.

'Given under our hands & seals.

"J. W. Crickenberger, (Seal.)
"for The Racket,        (Seal.)
"Townley Bros,         (Seal.)"

The Racket did not prove successful and by September, 1903, had become deeply involved, owing the said Townley Bros. over $2,000; and by deed of assignment, dated October 6, 1903, the entire stock of goods and merchandise of every character, including the lumber and timber and the book accounts, were sold to the said Townley Bros. According to the said deed of assignment Townley Bros. were to pay sixty-seven and one-half cents on the one dollar valuation of the goods, &c., and fifteen cents on the one dollar valuation of the book accounts and it was expressly provided that Townley Bros. assumed no part of the indebtedness of the Racket.

Within a short time after the execution of the last mentioned deed of assignment, numerous creditors of the Racket brought suit against Townley Bros. and J. W. Crickenberger, some suing Townley Bros. as owners of, and some as partners in, the Racket. Most of the suits were instituted before a justice and judgments were rendered against Townley Bros. and appeals taken. Others brought suit in the circuit court.

Townley Bros. filed their bill of complaint in the circuit court of Greenbrier county, January 16, 1904; making the creditors of the Racket parties defendant. The bill alleged that in March, 1903, the Racket Store was started in Lewisburg with J. W. Crickenberger as manager; that said Crickenberger applied to plaintiffs to sell him goods for the Racket Store and that plaintiffs did from time to time sell said Crickenberger goods; that for a time said Crickenberger made payments to plaintiffs, but plaintiffs soon found that said Crick-

enberger was not paying promptly and was owing plaintiffs over $2,000 and when called upon for a settlement in September, 1903, Crickenberger could not pay and that they proposed to him to sell them said stock of goods in liquidation of said indebtedness as far as possible, which proposal was accepted and the said goods removed to Ronceverte to the store of plaintiffs; alleging that the said transaction was in good faith and for a valuable consideration and that at the time Crickenberger represented to plaintiffs that he did not owe anything, outside of the indebtedness to plaintiffs, except $275 to the Clifton Forge Grocery Company and if he got that paid, which he did, he did not owe over $15.00; denied that they were partners with Crickenberger in the Racket Store or that they authorized him to buy goods in their name; alleging that about seventeen judgments had been rendered against them by Justice F. M. Arbuckle and that other suits were pending in said justice court and in the circuit court, and that other suits would be instituted. And for the purpose of preventing a multiplicity of suits and unnecessary litigation prayed for a convention of the creditors of said Racket Store, that the cause be referred to a commissioner for proper adjudication of the questions involved and that the defendants be enjoined from prosecuting said several suits at law and that the justice, F. M. Arbuckle, be enjoined from further taking jurisdiction of said cases and that the papers in all the cases pending before him be transmitted to the circuit clerk to be delivered to the commissioner when appointed, and for general relief. The court on the same day granted a temporary injunction.

On the 14th day of March, 1904, the plaintiffs filed an amended bill making the original bill a part thereof, making new parties defendants; alleging that the remedy of the defendants if *bona fide* creditors of the Racket Store was by bill in equity to have the court declare plaintiff's purchase a preference under the statute, if such preference was made to appear, and to require plaintiffs to account for the value of said stock of goods so that the same might be prorated among the creditors of said Racket Store; and praying for the same relief, and for a discovery of the real persons interested and connected with said Crickenberger and Russell in said Racket Store; and after consideration, on March 17, 1904, it

was decreed by the court that the plaintiffs were entitled to the relief prayed for and the injunction, having been dissolved on motion of the defendants, was re-instated. Several defendants demurred to the bill and filed their answers and the plaintiffs made special replication to the answer of Bowling Spotts & Company. Several defendants moved the court to dissolve the injunction and the motion was sustained as to some of the defendants.

On December 23, 1904, the parties appeared and the defendants by leave of court withdrew their demurrer to the bill and the cause came on to be heard on the bill and exhibits, the answer of the various defendants and general replication to same, and by consent of all parties the cause was referred to F. M. Arbuckle, Commissioner, with instructions to take, state and report an account showing:

"1.   Who constituted the firm called the Racket?

"2.   Who owned the Racket?

"3.   Did Townley Bros. hold themselves out to the public as owners or partners in the Racket?

"4.   The debts against the Racket and who are bound therefor.

"5.   Any other matter to be specially stated by the Commissioner deemed pertinent, or required by any party in interest."

Said Commissioner Arbuckle resigned as commissioner and by order of the court, February 16, 1905, Stuart M. Wood, a commissioner of the court, was directed to get the papers in these causes and to execute the said order of reference. The commissioner Wood filed his report February 7, 1906, and the cause came on to be heard upon the former papers, the report of the commissioner, and the exceptions of the plaintiffs and the defendants to the same; and without passing on the merits of the exceptions, the report was recommitted to the same commissioner to reply to the said exceptions. The said commissioner made his final report March 20, 1906, and on August 28, 1906, the cause came on to be finally heard when the court held Townley Bros. liable for the debts of the Racket as partners in the business of the Racket with J. W. Crickenberger; the exceptions of Townley Bros. to the report of the commissioners were overruled, and the exceptions of C. A. Bryant and C. A. Crickenberger to

said report were sustained; and decreed the amounts due each of the defendants and that the same be paid by Townley Bros. and J. W. Crickenberger, and decreed the costs of the suit to be paid by Townley Bros. From which decree Townley Bros. appealed and assign numerous errors.

The defendants, having withdrawn their demurrer, waived the same and by consent of all the parties to the cause their rights were submitted to a commissioner of the court for adjustment. The commissioner proceeded to take depositions and reported his conclusions thereon to the court. It is contended by appellants that all the defendants did not answer, that all excepting those who filed verified answers are precluded from making defense under section 3862, Code 1906, (section 42 chapter 125,) and the bills stand for confessed as to them. If any of the defendants failed to file their answers, the consent order of December 23, 1904, referring all the matters to commissioner Arbuckle waived all defects and formalities in pleading, and submitted the questions in issue between the parties to be reported to the court by the commissioner. Under the said order of reference as well as under the prayers of the bill and amended bill it was competent for any of the parties to the suit having claims against the Racket Store to lay them before the commissioner with their proof to establish the same. There seems to have been a full and complete hearing before the commissioner of the case on its merits as to each and every claim presented by the defendants. Exceptions were taken by the plaintiffs to the report of the commissioner as to the admission of improper evidence, which evidence was all reported to the court and it appears from the record that there was ample evidence which was admissible to establish the correctness of the claims allowed.

Did there exist such relation between the appellants Townley Bros. and "The Racket" as to make the former liable for the debts of the latter? Whether the contract of March 18, 1903, can be construed to be a contract of partnership as between the parties, does it not constitute the appellants partners in respect to strangers-creditors? "A partnership in respect to strangers exists, it is believed, in all cases where there is a partnership agreed on between the parties, and also, by the policy of the law, in many cases where such agreement is negatived. Thus, wherever there

is a community of profit, whether the loss be shared or not, and whether the names of the parties appear or not, there is a partnership as to third persons, because by taking a part of the profits each partner takes from the creditors of the firm a part of that fund which is the proper security to them for the payment of their debts; * * * * A partnership, therefore, in relation to strangers, is constituted, (1), By participating in the profits; and (2), Without such participation, by lending one's name to the concern"—3 Min. Inst. part 2, 671-672.

"Stronger evidence of the existence of the partnership is required between partners than by third persons."—*Hinkson v. Ervin*, 40 W. Va. 111; *Robinson v. Green*, 5 Har. (Del.) 115.

Under the contract of March 18, 1903, Townley Bros. were not only to share in the profits, receiving one-half thereof made on the goods furnished by them to the store, but it was further provided that settlements should be made with appellants weekly, and that "the entire stock contained in house of said business is owned by Townley Bros. until such settlement is made which must be weekly." The community of interest, the sharing of profits and ownership of appellants are all shown by the terms of the said contract. The intention of the parties is gathered from the words used in the contract. *Setzer v. Beale*, 19 W. Va. 274. As said in the opinion of the last cited case, at page 287: "A partnership, so far as third parties, creditors for example, are concerned, may exist without any contract between the parties forming the partnership and contrary to the intention of the parties."

The appellants deny having had any interest in the Racket Store, and deny telling anyone that they had, but the evidence is overwhelming that W. W. Townley, who was the general manager of the concern of Townley Bros. at Ronceverte, told various persons that they were the owners of the Racket. Some ten or twelve witnesses testifying to the fact. And there is evidence of several witnesses of dealings with Townley Bros. in carrying out contracts made by the other parties with the Racket, showing that they regarded the contracts made with the Racket as their own contracts. J. W. Dwyer, Cashier of Bank of Greenbrier, says W. W. Town-

ley told him in the director's room in the bank, during the time the Racket was in operation, that they owned the Racket; and also stated that they run an account with the bank and wanted to borrow some money. L. L. Townley, another one of the partners, told O. C. Crone, a farmer, that they owned the Racket. W. D. Townley, a partner, in a conversation with G. F. Darnell, representing as salesman the E. A. Saunders, Sons & Co. one of the creditors of the Racket, told him in speaking of the Racket. "This is our branch at Lewisburg;" and in the afternoon of the same day Darnell sold a bill of goods to the Racket. J. W. Lukins, salesman for Carr, Owens & Heineman, testifies to a conversation with J. W. Crickenberger who told him that Townley Bros. were his partners; that on the same day in the afternoon in the Town of Ronceverte he dropped into Townley Bros.' store and tried to sell them the same line of goods he had sold the Racket, that he told W. W. Townley he had sold the Racket and asked him whether Mr. Crickenberger's statement was correct, "he told me it was, and I shipped the bill on the strength of Mr. Townley's statement." While these statements are all denied by the Townleys, it is not at all probable that these ten or twelve witnesses could all be mistaken in the fact that these statements were made by the Townleys, and the fact that they were made at a time when the Racket seemed to be in a flourishing condition, when it could be pointed to by the owners thereof with some degree of pride, tends largely to corroborate the statements. They must have thought it was doing well or they would have insisted on weekly settlements as provided in their contract of March 18, 1903. When they began to repudiate it, and to deny any and all interest in it, was after it had become involved and they could begin to see danger in store for them. There is no evidence of their denial of interest in the Racket before it had become apparent that it was becoming involved and in danger of failure. Plaintiffs knew all the time that they were regarded by the public and by dealers as partners in, or owners of the Racket, and up to the middle of May were telling various people they owned it. And after they began to deny interest in it they took no steps to warn the public against dealing with it on their account, except to deny their interest when inquired

of. With their knowledge that the Racket was being given credit because of their connection with it, they owed it to the public as well as to themselves to publicly advertise the fact that they were not interested and would not stand responsible for the debts contracted with the Racket. They permitted the matter to go on as long as the Racket could get credit and then took over the whole stock, not only what they had furnished under the contract of March 18, 1903, but the goods which had been purchased from the defendants as well, to satisfy their debt.

The matters referred to the commissioner to report upon were questions of fact dependent upon quite a large mass of contradictory, parol testimony. In such cases, as held in *Boyd & Co.* v. *Gunnison & Co.*, 14 W. Va. 1; *Graham* v. *Graham*, 21 *Id.* 698; *Handy* v. *Scott*, 26 *Id.* 710; and many others, where questions purely of fact are referred to a commissioner to be reported upon, the finding of the commissioner, while not as conclusive as the verdict of a jury, will be given great weight and should be sustained, unless it plainly appears that they are not warranted by any reasonable view of the evidence. This rule operates with peculiar force in an appellate court, when the findings of a commissioner have been approved and sustained by the lower court. It is well shown that Townley Bros. held themselves out as owners of the Racket, or claimed to own it and thus made themselves liable for its debts, and the circuit court did not err in so holding.

Appellants' say the court erred in sustaining the exceptions of C. A. Bryant and C. A. Crickenberger respectively to the commissioner's report in rejecting their claims and in decreeing the same against the plaintiffs. The claim of Bryant is itemized showing an aggregate of $252.51 which he swears positively is just and correct, then admits the account of the Racket against him of $143.00 as a just offset; and his own testimony is corroborated to a large extent by other witnesses. The claim of C. A. Crickenberger seems to be well established and we cannot say that the court erred in sustaining these exceptions to the report and decreeing the payment of their claims.

In addition to the assignments of error in the petition for appeal, appellants assign as error matter *de-hors* the record

and bring to the attention of the court the contention that the decree complained of "is void because the Judge of the circuit court never in fact did pass upon and endorse the decree as entered," and file in support thereof the affidavits of an employee in the office of the circuit court of Greenbrier county, corroborated by the affidavit of the Clerk of said court. These affidavits are in no way made a part of the record in the cause. The record appears to be complete and "Imports such absolute verity, that no person against whom it is pronounced will be permitted to aver or prove anything against it." *State* v. *Vest*, 21 W. Va. 796. To be considered in the appellate court, the matter should be raised by motion in the court below and made part of the record. *State* v. *Vest*, cited. This Court cannot look beyond the record as it is made in the lower court.

There appears to be no reversible error in the decree and the same is affirmed.

*Affirmed.*