# CHARLESTON.

L. L. MARTIN *v.* J. H. BROWDER *et al.*

(No. 6770)

Submitted October 8, 1930.   Decided October 21, 1930.

*Morton & Snyder* for plaintiff in error.
*A. M. Belcher* and *Robert H. C. Kay* for defendant in error,

LIVELY, PRESIDENT:

Plaintiff Martin sold to defendant Browder two lots of land in Jefferson District of Kanawha County, for $6,000.00, of which sum $2,000.00 was paid in cash and the remainder evidenced by two negotiable promissory notes, each for $2,000.00, due in one and two years, dated February 10, 1926, signed by Browder and secured by vendor's lien. The last note was not paid, and Martin brought this suit in assumpsit against Browder and Exline, charging that they were partners in the purchase of his lots. The verdict and judgment were for plaintiff, and Exline prosecutes error.

The main controversy is whether Exline and Browder were partners. Browder, who was the only witness on this issue, and who furnished all the evidence for plaintiff, says they were partners. Exline denies the alleged partnership. Logically, the first phase to be considered is whether the evidence justified the jury's finding on that issue. If so, was there reversible error in the admission or rejection of evidence, or in the instructions? The declaration contained the common counts, and a special count charging that on the day of the purchase of the lots, "and for a long time prior and subsequent thereto, defendants were partners doing business under the firm name and style of J. H. Browder, and as such partners, were engaged in the buying and selling of real estate and the construction and erection of houses and other structures thereon," and that at their special instance and request, plaintiff sold the lot to them, which was used by them in their partnership business, took the notes, above described, the last of which was defaulted, to the damage of plaintiff. Exline demurred on the ground that this language charging partnership was merely a conclusion of law; that the facts on which the partnership was based should be set out in the declaration, so that defendants would not be surprised by the evidence taken in the trial. It is argued in support of the demurrer that facts and not conclusions must be pleaded, and cases are cited supporting this well known rule of pleading. Among these citations is *Kesler v. First National Bank*, (Tex.) 51 S. W. 62. This case involved an alleged partnership; the language of the

pleading being: "Plaintiff further alleges that at the time of the creation of the debt herein sued on that said cotton and mercantile businesses were conducted by defendant under the name of said Wangemann, and they both shared in the profits and losses of said businesses." This was the part which was held by the *lower* court to allege a partnership. The Court of Civil Appeals held this allegation to be insufficient, saying: "The averment that they shared in the profits and losses might be true without the existence of an agreement or understanding by which they became partners. Such sharing might take place without any agreement or partnership. The allegation is undoubtedly defective in that it fails to allege directly and positively the existence of the partnership, or, otherwise, all of the facts essential to constitute it." In the instant case, we have a direct and positive allegation that defendants were partners under a firm name and style and engaged in buying and selling real estate, and the construction and erection of houses and other buildings thereon. Generally, the above allegation of partnership is sufficient. Abbott's Forms of Pleadings, Vol. 1, (2nd Ed.), p. 95, gives the form as follows: "That at all the times hereinafter mentioned (or, from _____ 19____, to 19____), defendants were (and now are) copartners doing business in the city of _____ under the firm name and style of A. B. & Co., as (druggists)." The kind or character of the partnership is shown, and the connection therewith of the note sued on. The charge that defendants were partners implies that they had an agreement to that effect. "A declaration will be treated as alleging by implication every fact which can be implied from its averments by the most liberal intendment." Hogg's Pl. and Forms, sec. 140. Where the main fact is charged, all the evidential facts to sustain it are not required to be pleaded. To do so would be pleading evidence to sustain the main fact. "The general rule is that only the ultimate facts be alleged; the particular facts not primary and which are only evidence of the primary facts need not be averred." *Catlett* v. *Bloyd*, 83 W. Va. 776, 784. A bill of particulars, under sec. 46, chap. 130, would, if required, have given defendant a more detailed statement. It was not error to overrule the demurrer.

The evidence of the partnership relation is contained in Browder's testimony and exhibits, and it is deemed necessary to review the evidence as the point is raised that the evidence does not justify the conclusion that a partnership existed. The substance of his evidence is that he was a general contractor and builder in 1926, and in January, had completed a house in the Martin and Edwards Addition and went to the Security Bank & Trust Company, of which Exline was cashier or vice-president, to make a money deposit and was approached by Exline who asked ''if there was any more lots around there we could get,'' saying if any could be found he would be glad to go in with Browder and build some houses. A few days later, Browder found he could buy lots 8 and 9 at a bargain, and so reported to Exline, who directed him to purchase the lots, promising to honor. Browder's check for enough money ($200.00) to bind the contract of purchase, and had his (Exline's) attorneys examine the title and prepare the contract of purchase, and subsequently the deed from Martin to Browder, dated February 10, 1926. Browder gave Martin his check on the said bank for $1,800.00 ($200.00 having been previously given and paid at the bank), making the down payment of $2,000.00, and executed the above described notes, the last of which is the basis of this suit. Immediately two houses, one on each lot, were built by Browder. One of the houses was eventually sold, and the other one leased to Bolden by Exline. The contract of purchase from Martin of the two lots contained a covenant that Browder would build a dwelling on each lot, and endeavor to procure a loan on each from a life insurance company, and Martin agreed to take second lien for his purchase money. Two such loans were made, one for $8,000.00 on lot No. 1 and $7,000.00 on lot No. 2, after the buildings were erected, and Martin released his vendor's lien on both lots so as to give priority of these two insurance company liens, both dated July 22, 1926, and also giving priority to another trust deed to Peters, Trustee, which had been put on the lots on February 26, 1926. All of these loans and the release from Martin were negotiated by Exline. Over objection, Browder was permitted to testify that he and Exline, in 1926 (the same year), purchased another lot in near vicinity to the first lots

and built a house thereon, under the same agreement, which house was sold; and he introduced to the jury a statement of the disposition of the purchase money made by Exline, in which he (Exline) retained $290.00, which was one-half the profit made on that sale; also a letter from Exline, as vice-president, explanatory of the statement.

It seems that the lease of house No. 2 to Bolden, in the form of a letter, was prepared by Exline acting for Browder. And it appeared that at the time of rental to Bolden, default had been made in the semi-annual payment on the Metropolitan loan, and under the terms of the agreement for that loan, the rents of the property could be taken, in the event of default of a semi-annual payment, and that the rent from Bolden was so applied. The Metropolitan was looking after its interests through the bank. Browder's evidence is that he was to expend his time and labor, and Exline was to furnish the money, part of which was to come from insurance loans; and that they were to divide the profits. It appears that for the money which was placed to his credit for purchase of the lots and the material and labor for the houses, Browder gave his notes to the bank. Browder says he thought the money which was placed to his credit in the bank for the purchase price of the lots and the building of the houses, was the bank's money, as Exline told him he was going to furnish money from the bank, and that there was no personal money transactions between him and Exline. He said Exline told him that he did not want the bank to know that he (Exline) was engaged in outside business. Exline denied that statement, and said the bank well knew he was engaged in other businesses. Exline's testimony is in substance that Browder having purchased the lots, came to him as an officer, cashier or vice-president, of the bank and proposed to divide the profits if the bank would furnish the financing. Upon investigation, he thought there would be profit, and told Browder he could arrange it. The profit the bank would make was in first consummating the $8,000.00 and $7,000.00 loans and then selling them to the Metropolitan. *His* profit was to be derived from handling second mortgage paper. He said on direct examination: ''I was to profit by it, because the second mortgage paper, which is difficult to handle,

could best be handled by me. I was to finance the transaction and receive one-half profits for so doing.'' He never did furnish money personally. All the money which went into the proposition was furnished by the bank, which later received its money and profit from sale of the first mortgages to the Metropolitan. Browder says that second mortgage paper was never mentioned in the agreement, and that Exline was not to charge for obtaining money from the Metropolitan.

We have detailed at tedious length the testimony as given by these two witnesses, for it is urged that the evidence is not sufficient to sustain the verdict on the issue of partnership. In considering this point, we must discard that part of Exline's testimony which is in conflict with plaintiff's evidence. We must take it for true that Browder was approached by Exline who proposed to furnish the money against Browder's labor and time, the profits to be divided equally between them. There are circumstances which militate against Browder's contention, in connection with Exline's evidence, but the *weight* of the testimony has been settled by the verdict. Probably we would have weighed it differently, had we been on the jury.

Appellant argues that the evidence of Browder and the documentary evidence are not sufficient for plaintiff on the issue of partnership, and it was error to submit that question to the jury, as was done in plaintiff's only instruction given, which, in substance, told the jury if they found from the evidence and circumstances that Browder and Exline entered into an agreement whereby Exline was to furnish the finances and Browder was to furnish his time and skill, the profits to be divided equally between them, then there existed a partnership, though the business was conducted solely in the name of J. H. Browder; and therefore, it was error to refuse defendant's instruction No. 1, which was a peremptory instruction to find for defendant. Defendant relies on our cases of *Chapline* v. *Conant*, 3 W. Va. 507, and *Sodiker* v. *Applegate*, 24 W. Va. 411, as showing that there must be not only a participation in profits, but there must be a community, or joint ownership of the partnership funds, or a joint control over them. Under the early English cases, the test of sharing in the profits was the true test so far as third persons were concerned; but that test

has been abandoned both by the English and American courts, and it is quite generally held that a simple participation in the profits is not conclusive of partnership, even as to creditors. 20 R. C. L., p. 823, sec. 28. It is one of the strong indicia of partnership, but by no means conclusive. Under our decisions, as illustrated in *Clark* v. *Emery,* 58 W. Va. 637, the true test as between partners themselves is their intention, to be ascertained from all the facts; and if one of the supposed partners acquired any property in, or control over, or specific lien to the profits while they remain undivided, in preference to other creditors, by his agreement with the other supposed partners, then he is a partner, otherwise he is not. And in *Sodiker* v. *Applegate,* 24 W. Va. 411, it was held that sharing of profits, in order to constitute a partnership, must be mutual, that each person must have an interest in them as a principal trader. The mere receiving of profits as compensation for his services is not sufficient. If it be true that Exline was to furnish the money to be spent in the purchase of the lots and the construction of the houses, and Browder was to expend his time and work in the purchase and construction, the profits to be divided equally, they each had a community of interests in the profits and so far as third persons were concerned, were partners for mutual profit. The jury, by its verdict, has so found. The transactions with plaintiff and others were all in Browder's name, an indication to others that Browder alone was responsible, but that fact is by no means conclusive, for the firm name used is immaterial if they each contributed to the common enterprise either in money or labor with a view of making mutual profits. Another fact which strongly militates against a conclusion of partnership is that for the money which was placed to Browder's credit, he gave his individual notes. His explanation for so doing is that Exline, in furtherance of his agreement to furnish the money, had himself obtained the money from the bank. As above suggested, the weight of that fact, under the evidence, was peculiarly for the jury. It is quite generally held that it requires stronger evidence of the existence of a partnership as between partners, than it does where some third party sues the alleged partnership, one reason being that it is within the power of the partners to produce

stronger evidence than a third person could ordinarily produce. Rowley's Modern Law of Partnership, Vol. 2, sec. 877. Where there is no controversy of facts which are relied upon to show a partnership's relation, or where the agreement in writing is unambiguous, it is the court's duty to decide whether the facts or the writing legally constitute a partnership; but where the facts are in dispute, or the writing is ambiguous, it is for the jury to determine under proper instruction. 20 R. C. L., p. 849, sec. 55. We can see no error in submitting the case to the jury to ascertain if Exline, in agreeing to supply Browder money, was acting solely as an officer of the bank and in no other capacity, and telling them that if they so found, they should find for defendant Exline, even though they believed he was to get one-half the profits from second mortgage paper, as asked for and given by defendant; nor can we see error in submitting to the jury the converse of that proposition, namely, that if they believed that Exline agreed to furnish the money, and Browder to furnish his time and skill, both to share equally in the profits, then they should find for plaintiff, although the business was conducted solely in the name of J. H. Browder. These instructions fully covered the respective theories on which the case was tried. We cannot say, as we are urged to do, that the clear preponderance of the evidence is with plaintiff in error. In so doing, we would invade the province of the jury and weigh the verbal testimony of the two witnesses. Where two persons enter into an agreement to engage in a business, one furnishing the money and the other his skill and labor, each to share equally in the profits because of these contributions, they are liable on contracts made with others in prosecuting the common enterprise. *Ewers* v. *Montgomery,* 68 W. Va. 453; *Townley Bros.* v. *Crickenberger,* 64 W. Va. 379.

Exline objected to the introduction of evidence showing purchase and disposition of another house and lot, and participation therein by Exline of one-half the net profits. The witness said this lot was purchased, the house built thereon, and the property sold under the same arrangement by which the Martin lots and houses were handled, and a very short time thereafter. This evidence corroborated Browder's contention

that Exline was to share equally in the profits. Exline's statement of the disposition of the money derived from that sale showed he had retained one-half of the net profits. It was admissible as showing the course of dealings between the alleged partners, and was relevant to the issue of partnership, the controlling issue in the case. "The fact of the existence of a partnership may be proved by the habit and course of dealing, and by the conduct and declarations of the parties." Rowley, Modern Law of Partnership, Vol. 2, sec. 887. In point, is *Smith* v. *Hart*, 179 Ill. App. 98.

There are other points of error assigned which we think are unimportant, and even if error, were not prejudicial. Illustrative is the admission of the evidence of plaintiff's twenty-year-old son who accounted for plaintiff's absence at the trial, by saying that his father (plaintiff) was confined in a hospital at Baltimore from a stroke of paralysis. The cause of his absence was immaterial, and could not affect the issue of partnership. The evidence was designed to show why plaintiff was not present to prosecute his suit. How could defendant be prejudiced?

On the whole case, we perceive no reversible error, and therefore affirm.

*Affirmed.*