Icy Smith, Committee, *etc.*

*v.*

Penn Line Service, Inc., *et al.*

(No. 11056)

Submitted September 15, 1959. Decided **January 19, 1960.**

*J. W. Maxwell,* for plaintiffs in error.

*Lynch & Henderson, G. Berk Lynch,* for defendant in error.

*Steptoe & Johnson, Stanley C. Morris,* amicus curiae for Association of Casualty & Surety Companies, American Mutual Insurance Alliance, and National Association of Independent Insurance.

*Lane & Preiser, John J. Lane* and *Stanley E. Preiser,* amicus curiae for Wanda Carroll Armstead, an infant.

BERRY, JUDGE:

Icy Smith, as committee for Flora Robinson, hereinafter referred to as the plaintiff, instituted this action of trespass on the case in the Circuit Court of Raleigh County to recover for injuries sustained by plaintiff when the automobile, owned by defendant, Clarence Canterbury, and being driven by defendant, Dayton Canterbury, in which plaintiff was a guest passenger, collided with the parked truck owned by the defendant, Penn Line Service, Inc., and assigned to the custody of the defendant, J. W. Hosey, its agent and employee.

The truck belonging to the defendant, Penn Line Service, Inc., was used in its business of pruning trees along power line rights of way and is described as weighing about 6500 pounds and as having an overall length of twenty-one feet two inches, the bed thereof being twelve feet two inches in length and seven feet eleven inches overall in width, including a tool box containing pruning poles attached to and extending a distance of ten inches from the left side of the body of the truck along most of the bed. The truck was equipped with dual wheels on the rear which the bed overlapped a distance of four and one-half inches on each side. The tool box on the left side was set on a ledge at the bottom of the bed in such a fashion that it was practically all within the slight overlap at the left side of the rear wheels, as indicated by a photograph of said truck which was introduced in evidence during the trial by Penn Line Service, Inc. and Hosey and marked Defendants' Exhibit No. 7. The tool box was closed at both ends, open on one side and pruning poles placed therein were prevented from coming out by a heavy strap one foot from the rear of said box.

On the morning of February 28, 1957, the defendant, Hosey, being unable to work because of rain, parked

the truck in a slight curve on Valley Drive, a public street in the City of Beckley and also a portion of West Virginia State Route No. 16. Valley Drive is described as being forty feet in width and having four lanes, the two inside lanes being twelve feet in width and the two outside lanes being eight feet in width at the outer edge of which on each side there is a curb next to a sidewalk. There was no city ordinance prohibiting parking on the street in question, and the evidence shows that the outside lanes were customarily used for that purpose and the inside lanes used for vehicular traffic. No physical obstruction to the vision of the truck existed 256 feet back of the lane in which it was parked and for 318 feet back of the right hand vehicular lane' adjacent to which it was parked. In the position in which the truck was parked, the only witness, including all the witnessses who testified in the trial of the case, who said the wheels or tires on the right hand side of the truck were not against the curb, was Hughy Canterbury, a brother of the defendants, Dayton Canterbury and Clarence Canterbury, who testified on behalf of the plaintiff that it was a foot out from the curb, so under any view it was not parked in violation of the state statute requiring vehicles to be parked within eighteen inches of the existing curb in a parallel manner. If the figures of the witness, Jess Williams, who testified for the plaintiff as to an overall width of the truck being seven feet eleven inches, are correct, and the tire or wheel extended a foot from the curb, the other tire was two inches in the traveled lane, with the body of the truck six and one-half inches in the traveled lane. However, defendants' Exhibit No. 7, referred to above, properly introduced into evidence and made a part of the record in this case, indicates that the truck is not as wide as the witness stated, because the Exhibit, with the truck wheels portrayed against the curb, shows that at least eight inches existed between the left side of the truck and the twelve foot lane ordinarily used for vehicular traffic. Notwithstanding these measurements, Exhibit No. 7 indicates that the Canterbury car struck the truck owned

by Penn Line Service, Inc. at least 6½ inches to the right of the left edge thereof, clearly indicating that the accident occurred within the eight foot lane customarily used for parking. This fact is admitted in the final argument by an attorney for the plaintiff wherein he stated that the automobile in which the plaintiff was riding "pushed against the mud flaps covering the left dual wheels", which is clearly shown in defendants' Exhibit No. 7.

Plaintiff, an employee of the Raleigh Steam Laundry in the City of Beckley, completed a nine-hour shift at seven o'clock in the evening on February 28, 1957. Shortly thereafter, she entered the 1949 Pontiac automobile owned by the defendant, Clarence Canterbury, but driven by defendant, Dayton Canterbury, along with three other employees of the Raleigh Steam Laundry, the plaintiff sitting on the front seat of the automobile next to the door on the right side. All of the witnesses in the Canterbury car who testified on behalf of the plaintiff stated that at the time of the accident it was raining and foggy; that visibility was poor and that they could see for only twenty-five or thirty feet in front of the car. Other witnesses, including the police officer who investigated the accident, who testified for the plaintiff, said that it was raining but that objects could be seen by them for a distance of about two hundred feet. The evidence of the defendant, Penn Line Service, Inc., shows that it was raining, but denies that there was any fog or that visibility was abnormally impaired.

It is admitted that the windshield wiper on the right side of the automobile in which the plaintiff was a passenger was not operating, and two witnesses who arrived shortly after the accident testified that the driver of the Canterbury car admitted that the left hand windshield wiper and defroster on the car he was driving were not functioning, that the windshield was covered with fog and that he could not see the truck. However, the driver, Dayton Canterbury, denies mak-

ing such statements and says he does not remembe ·
stating that the windshield was covered with fog.

After the plaintiff entered the automobile driven b,
the defendant, Dayton Canterbury, they proceeded to
Valley Drive, turned thereon, and within a few blocks
the collision occurred, which, it was stipulated, was
more than one-half hour after sunset on that day. The
defendant, Dayton Canterbury, stated that the auto-
mobile he was operating was being driven at a speed
of from fifteen to twenty miles an hour and that he
did not see the parked truck of Penn Line Service, Inc.
until after the collision. One of the witnesses, a pass-
enger riding on the rear seat of the Canterbury car,
stated that they were not driving over thirty miles an
hour. After the automobile struck the rear end of the
Penn Line Service, Inc. truck, it ran for a distance of
about 150 feet past the truck before it was stopped.
The damage to the automobile started at the right
front headlight and continued along the right fender,
windshield, door post and door which were indented
and badly bent but still attached to the body of the
car. The plaintiff was seriously injured, losing the
sight of her left eye and suffering brain damage
affecting "her ability to be emotionally stable and
ability to concentrate, ability to remember, ability to
maintain her balance, and ability to stick to any job
and complete any simple task." A piece of wood was
removed from the plaintiff's left eye which apparently
was a part of a shattered pruning pole found in the
street. The poles were carried in the tool carrier with
the strap padlocked and it was impossible to get them
out without breaking them, because of a flange on the
front end and a strap on the rear. The impact caused
by the collision broke the strap and several poles. By
testimony of witness and by photographs it was shown
that after the crash the car had on its side a series of
tire marks corresponding to the snow grip tread of
tires on the truck. These marks came up to the car win-
dows. Defendants' Exhibit No. 8, introduced as evi-
dence in this case, shows deep indentations made by

the truck tires beginning about six inches from the edge of the right fender or on the interior thereof. In any event, it is clearly shown that it was more than two inches from the right side of the car, and under no version of testimony were the tires of the truck over two inches into the portion of the highway customarily used for vehicular traffic, so that the first point of impact is disclosed by the physical facts to have been within the eight foot parking lane.

The defendant, Penn Line Service, Inc., introduced evidence, as heretofore mentioned, denying that there was any fog present or that visibility was abnormally impaired. It also introduced evidence to show that the truck was parked directly beneath a street light which contained a 189 watt bulb, equipped with a reflector which caused the light therefrom to be cast in the shape of the figure "8", so that it would overlap the pattern cast by other identical lights. Back from this street light, in the direction from which the Canterbury car was proceeding and on the opposite side of the street, a distance of 159.3 feet, is another street light. Farther down the street from the street light by which the truck was parked, on the same side of the street, a distance of 170.3 feet, was another street light. All were equipped with 189 watt bulbs and reflectors. A witness for Penn Line Service, Inc., who lived near the scene of the accident, was not allowed to testify before the jury that he could see an object from 500 feet away on that street at the time of the wreck. This answer was vouched for the record but he was allowed to testify before the jury that he saw the truck 150 to 200 feet away from where he was at the time he heard the crash. Dayton Canterbury said that after the accident he could see the truck over 150 feet away, although he stated that before the accident he could see for only 25 or 30 feet in front of the car he was driving and did not see the truck at any time until after the accident. Other disinterested witnesses, attracted by the commotion, said they could see the wrecked vehicle for approximately 400 feet. A lighting

expert testified that an object could be seen for 500 feet, even in a drizzling rain.

At the conclusion of the plaintiff's evidence, the trial court sustained motions with regard to the violation of certain statutes dealing with the placing of flares, flags, parking within 18 inches of a curb and violation of a parking ordinance of the City of Beckley wherein parking was prohibited for more than twenty-four hours, holding that a violation thereof had not been proved by the evidence introduced in the case, and we think rightly so. The only motion of the defendants, Penn Line Service, Inc. and Hosey, for a directed verdict, which was overruled, relative to the violation of certain statutes, was one pertaining to Code, 17C-15-15 (b), as amended.

At the conclusion of all the evidence, a motion for a directed verdict on behalf of Clarence Canterbury was sustained on the ground that he did not authorize Dayton Canterbury to transport passengers other than his family. A like motion as to the defendants, Penn Line Service, Inc. and Hosey, was overruled on the ground that their negligence was a jury question. A motion to declare a mistrial on behalf of Penn Line Service, Inc. and J. W. Hosey, because the plaintiff was allowed to be present in the courtroom during the trial was also overruled.

The jury first returned a verdict in favor of the defendant, Dayton Canterbury, saying he was not negligent, and only against the defendant, Penn Line Service, Inc., in the amount of $85,000.00, but the court, after conference with counsel, sent the jury back to dispose of the case of the defendant, Hosey, and it then included him in the verdict finding against both Penn Line Service, Inc. and Hosey. A motion to set aside the verdict was overruled and judgment entered thereon, to which this Court granted a writ of error and supersedeas on March 9, 1959.

The trial of this case consumed several days and the errors complained of by counsel for the defendant,

Penn Line Service, Inc., are numerous. However, most of the errors assigned are without merit or proper objections, and motions were not made in order to save them and thus have same considered by this Court.

The declaration in this case is rather lengthy and consists of three counts. The first count alleges both common law and statutory duties of the defendants, Penn Line Service, Inc. and J. W. Hosey, and the violation thereof; the second count alleges the common law duties of the defendants, Dayton Canterbury and Clarence Canterbury, and the violation thereof, and the third count combines all of these alleged violations against all four defendants.

Unless the five hundred foot statute, Code, 17C-15-15-(b), as amended, as covered by Instruction No. 9, offered by the plaintiff and given by the Court, is applicable, and the defendants, Penn Line Service, Inc. and Hosey, are subject to its provision, it was, of course, reversible error to give this instruction. The only ordinance of the City of Beckley to which reference is made in this record is one prohibiting parking of vehicles within the city limits for a period of twenty-four hours. The uncontradicted evidence shows that the truck in question had been parked for only approximately nine hours and therefore this ordinance was not applicable to this case.

The first question to be considered in the disposition of this case is whether plaintiff's Instruction No. 9 and the statute upon which it was based are applicable to this case. By Chapter 129, Acts of the Legislature, Regular Session, 1951, Chapter 17 of the West Virginia Code, as theretofore amended, and titled "Roads and Highways" was amended and four new Chapters, 17A, 17B, 17C and 17D were added. Since the reenactment of 1951, this Court has not had occasion to construe many of the provisions of the Code relative to these matters. The consideration of the threshold question calls for a construction of certain sections of Chapter 17C, titled "Traffic Regulations and Laws

of the Road", which are hereinafter quoted. Plaintiff's Instruction No. 9 and the applicable statute upon which the Instruction is based will be quoted in full, in order that a clear understanding may be had of the question involved. Plaintiff's Instruction No. 9 reads as follows:

"The court instructs the jury that the statutory law of this state provides that, 'Whenever a vehicle is parked or stopped upon a roadway or shoulder adjacent thereto, whether attended or unattended, during the hours between a half hour after sunset and a half hour before sunrise and there is not sufficient light to reveal any person or object within a distance of five hundred feet upon such highway, such vehicle so parked or stopped shall be equipped with one or more lamps which shall exhibit a white light on the roadway side visible from a distance of five hundred feet to the front of such vehicle and a red light visible from a distance of five hundred feet to the rear.'

"Therefore, if you believe from the evidence that the truck of Penn Line Service, Inc., was parked upon the roadway between the hours cited in the statute, and that there was not sufficient light to reveal a person or object within a distance of 500 feet on that highway, and if you believe that the truck was not then equipped with the lights or lamps required by the statute, then the defendants, Penn Line Service, Inc., and J. W. Hosey were guilty of prima facie negligence, and if you further believe from the evidence that such negligence was a proximate cause of the accident, your verdict should be in favor of the plaintiff and against defendants, Penn Line Service, Inc., and J. W. Hosey unless Flora Robinson was guilty of negligence."

The pertinent part of the statute upon which this Instruction is based, Code, 17C-15-15, reads as follows:

"*Lamps on Parked Vehicles.*

"(a) Whenever a vehicle is lawfully parked upon a street or highway during the hours between a half hour after sunset and a half hour before sunrise and in the event there is sufficient light to reveal any person or object within a distance of five hundred

feet upon such street or highway no lights need be displayed upon such parked vehicle.

"(b) Whenever a vehicle is parked or stopped upon a roadway or shoulder adjacent thereto, whether attended or unattended, during the hours between a half hour after sunset and a half hour before sunrise and there is not sufficient light to reveal any person or object within a distance of five hundred feet upon such highway, such vehicle so parked or stopped shall be equipped with one or more lamps which shall exhibit a white light on the roadway side visible from a distance of five hundred feet to the front of such vehicle and a red light visible from a distance of five hundred feet to the rear.

\* \* \* \*

"(c) Any lighted head lamps upon a parked vehicle shall be depressed or dimmed."

It will be noted that the first paragraph of Instruction No. 9 refers to paragraph (b) of this statute. It will also be noted that the second paragraph of Instruction No. 9 does not follow the language of the statute. It merely states that if the jury finds that the defendant's truck was parked and not equipped with lights or lamps required by the statute, then the defendants, Penn Line Service, Inc. and J. W. Hosey are guilty of prima facie negligence and they could find against the defendants unless they found Flora Robinson guilty of negligence. The statute requires that such lights or lamps be exhibited or displayed. There is no evidence in this case that the truck in question was not equipped with such lights, but it is admitted or agreed that same were not displayed at the time of the accident. In a statute such as this, there must be some standard to be used in determining the distance stated therein because it would be impossible to see 500 feet away in every given instance. This would be true where a curve was in the road, thus making it impossible to see 500 feet straight ahead, or where the weather conditions were such that it would be impossible to see 500 feet either to the front or to the rear. This standard was set up and fixed in a prior statute in the same section, Code,

17C-15-3, titled, "Visibility Distance and Mounted Height of Lamps", and reads as follows:

"(a)' Whenever requirement is hereinafter declared as to the distance from which certain lamps and devices shall render objects visible or within which such lamps or devices shall be visible said provisions shall apply during the times stated in section two [§1721 (406)] of this article in respect to a vehicle without load when upon a straight, level, unlighted highway under normal atmospheric conditions unless a different time or condition is expressly stated.

"(b) Whenever requirement is hereinafter declared as to the mounted height of lamps or devices it shall mean from the center of such lamp or device to the level ground upon which the vehicle stands when such vehicle is without a load."

Section 2, Code, 17C-15-2, referred to in the statute which is quoted, reads as follows:

"Every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise and at any other time when there is not sufficient light to render clearly discernible persons and vehicles on the highway at a distance of five hundred feet ahead shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles as hereinafter stated."

The exceptions referred to in this section are indicated in paragraph (a) of Code, 17C-15-15, which is applicable to this case, wherein it is stated that when a vehicle is lawfully parked on a street or highway between a half hour after sunset and a half hour before sunrise, and there is sufficient light to reveal any person or object within a distance of five hundred feet, no lights need be displayed upon such vehicle. The five hundred feet must be read in connection with the standard set out in Code, 17C-15-3, "under normal atmospheric conditions". This logical construction is borne out by decisions in similar or related cases. See 21 A.L.R. 2d §7, page 111 and *Rowe v. Safeway*

*Stores,* (Wash.) 128 P. 2d 293. In the *Rowe* case both the majority and dissenting opinions construe the statute to mean a light visible for five hundred feet under normal weather conditions. It is true that the *Rowe* case refers to a light on a vehicle being seen, but the same rule would apply to a street light sufficient to reveal an object for five hundred feet under normal atmospheric conditions. This is exactly what paragraph (a) of Code, 17C-15-15 states when it says that it is not necessary to display lights on any parked vehicle where there is sufficient light to reveal said object within a distance of five hundred feet.

There is no conflict in the evidence or any controversy in this case with regard to the fact that the street lights in and about the scene of the accident produced sufficient light to reveal the truck at the time of the accident for a distance of five hundred feet under normal weather conditions.

We now come to the question of whether the truck of the defendant, Penn Line Service, Inc., was lawfully parked on Valley Drive in the City of Beckley at the time of the accident. There is no question from the evidence but that the eight foot strips or lanes on each side of Valley Drive were customarily used for the parking of vehicles. The state statute dealing with parking of vehicles, Code, 17C-13-4, provides that every vehicle stopped or parked upon a roadway where there are adjacent curbs shall be parked with the right hand wheels of such vehicle parallel to and within eighteen inches of the right hand curb. The word parallel distinguishes such parking from angle parking. There is no question in this case that the Penn Line Service, Inc. truck was parked substantially parallel to and within eighteen inches of the curb and did not violate this statute. There was no violation of any parking ordinance of the City of Beckley with regard to the parking of the truck of Penn Line Service, Inc. at the place in question. The only prohibition was that it could not be parked for a period of more than twenty-four hours and the evidence in this case

shows that the truck had been parked for a period of only nine hours at the time of the accident. It will be seen that all statutes and ordinances applicable to the parking of this truck were complied with and the truck was lawfully parked. It would therefore clearly appear that the giving of plaintiff's Instruction No. 9 in this case was reversible error. The Instruction is not applicable as indicated in paragraph (a) of Code, 17C-15-15, which is the pertinent part of the statute applicable to this case, but even the provisions of paragraph (b) of said section, upon which the Instruction is based, also show that it is not applicable to this case, because it likewise states that where a vehicle is parked or stopped during said hours and there is insufficient light to reveal an object for five hundred feet, the light shall be exhibited, regardless of whether it is lawfully parked at the time. This statute likewise must be construed in connection with the standard applicable to the five hundred feet, which is, under *normal atmospheric conditions,* and as heretofore stated, the street lights where the truck was parked made it clearly visible for at least five hundred feet under normal atmospheric conditions.

The logical construction of the statute in question, Code, 17C-15-15, is that if there was sufficient light to see the truck for five hundred feet under normal atmospheric conditions, it was not necessary for lights to be displayed on the truck, and in case of poor visibility by virtue of which the lights that could be seen under normal weather conditions could not then be seen, Code, 17C-6-1 places the burden upon the approaching driver of an automobile to use due care so as to avoid colliding with another vehicle lawfully parked.

We now come to the next and most important question involved in this case, and that is, the question of proximate cause. Even if the defendant, Penn Line Service, Inc. had violated the statute with regard to displaying lights, which, under the law of this state, would constitute prima facie negligence, the plaintiff could not recover unless the violation of the statute

was the proximate cause of the accident. 4 Blashfield, Part 2, § § 2632, 2643; 5 Am. Jur., Automobiles, §164; *Ambrose v. Young,* 100 W. Va. 452, 130 S.E. 810.

The principle involved here is discussed in 5A Am. Jur., Automobiles and Highway Traffic, §410, wherein it is stated:

> "Negligence in leaving an automobile parked on or along the street or highway without lights or insufficiently lighted does not, however, charge the owner or operator with responsibility for an accident involving such automobile unless the negligence in this respect can be said to be a proximate cause of the accident or injury; and in many of the cases involving the negligence of one who leaves an automobile unlighted or insufficiently lighted, the ultimate issue was whether the proximate cause of the accident was the intervening negligence of a third person. Such negligence may be regarded as the proximate cause, or a proximate cause, of injury to an occupant of another car where it is immediately occasioned by the act of the driver of the latter car in colliding with the parked automobile."

It was held in the case of *Duff v. Lykins,* (Ky.) 306 S.W.2d 252, with a factual situation comparable to the case at bar, that the owner of a truck parked on a state highway within the city limits was not liable for injuries sustained by an occupant of an automobile which collided with an unlighted truck at night where such parking was not prohibited by city ordinance.

It was also held in the case of *Powell v. General Accident, Fire & Life Assur. Corp.,* (La.) 18 So. 2d 921, that where a motorist ran into the rear end of a truck which was parked next to the curb at night, within the city limits, although the truck had no lights burning it was illuminated by lights from a nearby fruit stand, the accident was caused solely by the driver's negligence and recovery was barred. The similarity of the Powell case to the case at bar is clearly shown in the last paragraph of the opinion which reads as follows:

> "The preponderance of the evidence is to the effect that vehicles were customarily parked at the

place where the accident occurred and without lights. The accident having occurred within the City of Baton Rouge, and there being no statute or ordinance of the said city prohibiting the parking of motor vehicles without lights in that neighborhood, it is our opinion the defendant was not guilty of any negligence in parking the Chevrolet truck and that the accident was caused solely by the negligence and inattention of Mr. Powell, and that consequently the judgment below is correct and it is affirmed."

In the case of *Scott v. Engineering Co.*, 117 W.Va. 395, 397, 185 S.E. 553, it was held, with facts somewhat similar to those in the case at bar, that the manner in which a truck was parked, even though it violated the statute with regard to parking, did not proximately cause the accident and the plaintiff could not recover when he ran into said truck. In disposing of this question in the *Scott* case, the Court said:

"The view was unobstructed from the top of the hill to the point where the defendant's truck was parked, according to the plaintiff, a distance of one hundred fifty feet. Under these circumstances, it was plainly the duty of the plaintiff to have paid some attention to his view of the road after he passed over the hill, and, certainly, at some time before he was within thirty feet of the defendant's truck. Apparently, he was paying little or no heed to what was before him. There was no other traffic on the road and nothing to prevent plaintiff from passing around defendant's truck without difficulty. It is true that the road was slippery, but the plaintiff was fully aware of that fact and had taken precautions against it, both in the matter of having chains upon his car and in the speed at which he was driving. To drive within thirty feet of a parked truck, under the circumstances of this case, without looking at the road in front, we think, without doubt, convicts the plaintiff *or* being guilty of negligence as a matter of law. That negligence, having appreciably followed that of the defendant in point of time, was the independent efficient, or proximate, cause of the damage to plaintiff's car. It was a happening distinctly intervening between the negligence of the defendant and the accident, without which the accident would not have happened. This fact prevents

the act of the defendant from being the proximate cause of the damage to the plaintiff."

In the case of *Divita v. Trucking Co.*, 129 W.Va. 267, 276, 277, 40 S.E.2d 324, cited in the plaintiff's brief as authority to support her position, it might be well to point out that although the Court said the plaintiff was barred from recovery because of contributory negligence as a matter of law on the part of the driver running into the rear of a parked truck projecting into the highway being imputed to him, since he was the owner of the car or taxi involved and in which he was a passenger at the time of the collision, the reason the truck driver was held to be guilty of common law negligence was because he parked his truck in the traveled portion of the highway when he should have stopped same so as to be clear of the traveled portion of the highway, a reason which does not exist in the case presented here. The Court further stated, however, in the *Divita* case that:

"It is elementary that notwithstanding a finding of primary negligence on the part of defendant, to sustain a recovery thereon, it must also be shown that such negligence was the sole proximate cause of the damage complained of. If it appears that plaintiff was guilty of acts of negligence which 'proximately contributed' to the damage complained of, plaintiff is barred of recovery. The term proximate cause has been defined as that cause ' * * * without which the accident would not have occurred * * * '. *Anderson v. Railroad Co.*, 74 W.Va. 17, 19, 81 S.E. 579; *Scott v. Engineering Co.*, 117 W.Va. 395, 398, 185 S.E. 553; *Miller v. Douglas*, 121 W.Va. 638, 5 S.E.2d 799. It necessarily follows that the term proximately contributed is of similar import. Therefore, we are called upon to ascertain if plaintiff and his driver were guilty of negligent acts 'without which the accident would not have occurred.' We think that under the circumstances stated above, they were guilty of such acts."

The principle is stated in 4 Blashfield, Automobile Law and Practice, §2641, in the following language:

"A motorist colliding with an automobile parked on the highway is guilty of negligence proximately

causing the collision if he could have seen the parked automobile in time to avoid the collision, but the contrary is true if the accident would have occurred even if he had seen the parked vehicle within a reasonable time before the accident."

In the case of *Hubbard v. Murray*, (Va.) 3 S.E.2d 397, 401, it is held that where the defendant's bus violated a statute by stopping partially in the highway and was "sideswiped" by the plaintiff's truck, the proximate cause was the collision of the truck of the plaintiff with the bus and that there could be no recovery as a matter of law. The court, in that case, held:

"From what was said in these cases we deduce the following general rule: Where a second tortfeasor becomes aware, or by the exercise of ordinary care should be aware, of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter by an independent act of negligence brings about an accident, the condition created by the first tort-feasor becomes merely a circumstance of the accident, but is not a proximate cause thereof. The original negligence of the first tort-feasor is legally insulated by the intervening independent negligence of the second tort-feasor, and the latter becomes the sole proximate cause of the accident."

See also *Roanoke Railway & Electric Co. v. Whitner*, (Va.) 3 S.E.2d 169.

In the recent case of *Godwin v. Nixon*, (N.C.) 74 S.E.2d 24, it was held that the plaintiff, a guest passenger, could not recover from the defendant as a matter of law when the car in which the plaintiff was riding struck the rear of a tractor trailer owned by defendants and which was parked within the city limits of the town of Selma, North Carolina, because the parked tractor trailer was not the proximate cause of the accident, even if the defendants were negligent in so parking the tractor trailer. It will be seen from the authorities cited in cases similar to the one presented here that even though the parking of the vehicle by the defendants violated the statute, or if they were guilty of common law negligence in so parking, there

can be no recovery where an automobile runs into a parked vehicle, because the sole proximate cause of such accident is the driving of the automobile into the parked vehicle when the driver saw or should have seen the parked vehicle.

The truck of the Penn Line Service, Inc. was parked in a slight curve in a place customarily used for parking. There was no ordinance or statutory provision prohibiting that parking; therefore, defendant had a right to park its truck at such place. 2A Blashfield, Automobile Law and Practice, §1193. *Boucher v. Groendyke Transport Co.,* (Okl.) 160 P. 2d 403. It has been held that it was not unlawful to park a vehicle on a city street under such circumstances. It was incumbent upon the defendant, Dayton Canterbury, the driver of the car in which the plaintiff was a passenger, to use due care under the circumstances to avoid the accident. He stated that he could not see over 25 or 30 feet before the accident and he therefore should have driven his car at such speed as would have enabled him to stop the vehicle before running into the truck. He cannot be excused because he said he did not see the truck. The truck was standing under a street light with other street lights within the vicinity burning and he did see the truck after the accident for a distance of 150 feet. If he had looked effectively he would have seen the truck, and if he had used the proper care in keeping a lookout the accident would not have occurred. *Moore v. Burriss,* 132 W.Va. 757, 54 S.E.2d 23; *Moore v. Skyline Cab Co.,* 134 W.Va. 121, 59 S.E.2d 437. The negligent act, without which the injury to the plaintiff would not have resulted, was the driving of the vehicle in which the plaintiff was riding into the rear of the parked truck of Penn Line Service, Inc., and this was clearly the sole proximate cause of the accident in this case. *Webb v. Sessler,* 135 W. Va. 341, 63 S.E.2d 65; *C. & O. Ry. Co. v. Hartwell,* 142 W.Va. 318, 95 S.E.2d 462.

It is clear from the facts in this case that the defendant, Dayton Canterbury, was guilty of negligence

as a matter of law and that the trial court should have so instructed the jury.

If it can be said that the parking of the Penn Line Service, Inc. truck furnished a condition or occasion for plaintiff's injury, it would be remote, and the intervening, efficient cause of the injury was the driving of the Canterbury car into the rear of defendant's truck, which is but another way of stating that the parking of the truck was not the proximate cause of the injury. 65 C.J.S., Negligence, §111 (d); *Scott v. Engineering Co.,* 117 W.Va. 395, 185 S.E. 553; *Hubbard v. Murray,* (Va.) 3 S.E. 2d 397; *Hartley v. Crede,* 140 W.Va. 133, 82 S.E.2d 672.

The cases cited and relied upon by the plaintiff are different, both as to facts and the law applicable thereto. The case of *Cooper v. Teter,* 123 W.Va. 372, 15 S.E.2d 152, is not in point. There was no collision of one car with the other and no causal connection between the defendant's parked wrecker and the striking of plaintiff by an approaching automobile. The case of *Wilson, Admx. v. Edwards,* 138 W.Va. 613, 77 S.E.2d 164, is distinguished from the case at bar because the defendants' truck was parked at the end of a curve in the open country and there were no lights burning independently of the vehicle to reveal the truck to the driver of the car that hit same.

The case of *Porterfield v. Sudduth,* 117 W.Va. 231, 185 S.E. 209, presents an entirely different situation from the one in the instant case, because in the *Porterfield* case the defendant's truck was stopped in the center of the street at an intersection on a foggy night, with no lights, and the plaintiff's husband, while proceeding in traffic, ran into the rear of defendant's truck, thereby injuring the plaintiff. The defendant, in that case, was clearly guilty of common law negligence and the case merely held that under the circumstances the plaintiff, the wife of the driver of the vehicle, was not guilty of contributory negligence as a matter of law.

The case of *Darling v. Browning,* 120 W.Va. 666, 200 S.E. 737, is distinguished from the case at bar because the evidence was that the defendant's truck was parked in the City of Huntington at an angle of about forty-five degrees, with the rear of the truck protruding unduly into the traffic lane, thus making the defendant guilty of common law negligence. The case of *Rowe v. Safeway Stores, supra,* was decided by an equally divided court and the facts are quite different from those in the case at bar. In the *Rowe* case the defendant stopped his truck, which was without lights, in the line of traffic in the City of Olympia, Washington, because of the dense fog, and he thereby blocked the main traveled portion of the highway. The plaintiff who was proceeding behind the defendant's truck ran into the rear of the truck, and there was common law negligence on the part of the defendant. The only similar part of the *Rowe* case to the one presented here is the instruction based on the statute which is identical with the one attempted to be used in the instant case. It was held that it was error to refuse to give this instruction, but in the *Rowe* case there was no evidence that there were street lights burning which would reveal an object or the truck in question for five hundred feet, under normal weather conditions, such as is undisputably present in the case at bar.

It appears from the facts in this case that the parking of the truck owned by the Penn Line Service, Inc. was not the proximate cause of the accident and the injuries which resulted to the plaintiff. Although the driver of the Canterbury car, Dayton Canterbury, stated that he was driving at only about 15 or 20 miles an hour, the uncontradicted fact that his car ran 153 feet after crashing into the rear and side of the parked truck would indicate that he was traveling at a faster rate of speed. Then, too, the physical facts as indicated by the testimony and exhibits introduced in evidence and made a part of the record indicate that the Canterbury car hit the truck well

within the eight foot strip or lane used for parking purposes. The plaintiff's witness, Officer Williams, stated that the portion of the highway ordinarily used for vehicular traffic was the two inside twelve foot lanes. The plaintiff was not driving on this portion of the street or highway at the time of the accident. It would further appear that the Penn Line Service, Inc. truck was lawfully parked in a place commonly used both day and night for parking both automobiles and trucks, and that the sole proximate cause of the accident and the injuries suffered by the plaintiff was the act of Dayton Canterbury in driving into the rear and side of the parked truck. It is also interesting to note that every person present at or near the scene of the accident, except those inside the automobile driven by Dayton Canterbury, stated that they could see at least two hundred or more feet, and even Dayton Canterbury stated that after he got out of the automobile he could see the truck, which was then about 150 feet distant. This would indicate that the windshield of the car driven by Canterbury was beclouded or both windshield wipers were not working and would confirm the statements attributed to Dayton Canterbury, made with regard to this matter, by at least two witnesses after the accident occurred. If this condition existed, and it is not necessary so to find in this case, another principle of law would be involved, because the plaintiff would be charged with some duty with regard to this matter. She either knew, or should have known by due diligence, that such condition existed and the principle expressed in the cases of *Clise v. Prunty,* 108 W.Va. 635, 152 S.E. 201; *Herold v. Clendennen,* 111 W. Va. 121, 161 S.E. 21, which would bar recovery, might well be applicable.

The assignment of error as to the alleged improper argument to the jury and the blackboard demonstration in connection therewith by the attorneys for the plaintiff has created much interest in this state. It has been briefed exhaustively, not only by counsel

for the parties in the case at bar; but by *amici curiae* briefs of interested parties. There is a sharp conflict of authority in other jurisdictions in connection with this question and it has never been passed on in this state. However, this question is not properly presented to this Court in this case for a decision thereon, and although it is not necessary to discuss this question in the disposition of this case, we shall indicate the reason for failing to pass on it at this time because of the interest displayed in connection with this matter.

At no time during the argument of plaintiff's counsel before the jury did counsel for the defendants make any objection whatsoever to the use of a blackboard. Three perfunctory objections were made by counsel for the defendants to alleged improper argument of counsel for the plaintiff during the final argument to the jury, but no motion was made on any of these occasions for the court to declare a mistrial or to instruct the jury not to consider the remarks of counsel. As a general rule, it is necessary for the complaining party to ask for and be refused either an instruction to the jury to disregard an alleged improper argument, or to move for a mistrial and duly except to such refusal to so instruct or grant said motion, before this Court will consider such matter. *Landers v. Ohio River R.R. Co.*, 46 W.Va. 492, 33 S.E. 296; *Given v. Diamond Shoe Co.*, 84 W.Va. 631, 101 S.E. 153; *Keathley v. Railway Co.*, 85 W.Va. 173, 102 S.E. 244; *State v. Statler*, 86 W.Va. 425, 103 S.E. 345; *McCullough v. Clark*, 88 W.Va. 22, 106 S.E. 61; *Deitz v. County Court*, 122 W.Va. 296, 8 S.E.2d 884; *Yuncke v. Welker*, 128 W. Va. 299, 36 S.E.2d 410; *Hargrow v. Watson*, (Va.) 104 S.E.2d 37.

An attempt was made to make the matter concerning the blackboard a part of the record by an affidavit, after the completion of the trial. This was improper and such matter will not be considered by this Court in a separate bill of exceptions. See *Townley Bros.*

*v. Crickenberger*, 64 W.Va. 379, 63 S.E. 320 and *Snodgrass v. NuGrape Co.*, 113 W.Va. 748, 169 S.E. 406.

For the reasons contained herein, the judgment of the Circuit Court of Raleigh County is reversed, the verdict is set aside and the defendants, Penn Line Service, Inc. and J. W. Hosey, are awarded a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*

BROWNING, PRESIDENT, dissenting:

I respectfully dissent from the decision of the Court in this case in holding as a matter of law that: (1) The defendants, Penn Line Service, Inc., and J. W. Hosey, were not guilty of negligence; (2) if they were guilty of negligence, they were not liable to the plaintiff since the sole proximate cause of the plaintiff's injuries was the negligence of the defendant Canterbury; and (3) the implication, at least, that if these defendants were guilty of negligence, and their negligence contributed proximately to the plaintiff's injuries, she would be barred from recovery by her contributory negligence. My primary concern is the holding from the evidence in this record that no question of negligence was presented for jury determination. If there was no primary negligence such negligence, of course, could not have been a proximate cause of the plaintiff's injuries, and, in the absence of primary negligence, there could have been no contributory negligence. Hereinafter Penn Line Service, Inc., and their driver Hosey, will be referred to as the defendants. If reference to the defendant Canterbury is necessary, he will be referred to as the defendant Canterbury.

It is my opinion that the holding that the defendants were guilty of no negligence is in conflict with the weight of authority in this country and many prior decisions of this Court, and that this erroneous conclusion was predicated upon three false premises:

(1) That the collision occurred within the *municipal limits* of the City of Beckley was significant; (2) the judicial determination that the truck was "lawfully" parked when such determination was peculiarly one of fact for jury determination; and (3) the judicial assumption that the two outside lanes of this four lane highway were parking lanes, and that only the two inside lanes were used for vehicular traffic, whereas this question was at least one of fact to be decided by the jury.

In *Moore v. Virginia Transit Company*, 188 Va. 493, 50 S. E. 2d. 268, it was held that a statute requiring lights to be exhibited on vehicles stopped on a highway was applicable to a vehicle parked on a city street, and that the defense that there was a city ordinance providing otherwise was an affirmative one to be established by the defendants.

The Legislature of this State, at its Regular Session, 1951, by Chapter 129, amended Chapter 17 of the Code, as theretofore amended, which is titled "Roads and Highways" and added three new chapters, 17A, 17B and 17C, thereby completely reenacting the Motor Vehicle Law of this State as it then existed, and adding many new provisions. These four chapters cover one hundred and thirty-six pages of Michie's West Virginia Code of 1955. This Act is so comprehensive that it is sometimes referred to as the Motor Vehicle Code, and the legislation closely follows that of many other states and is also often referred to as the Uniform Motor Vehicle Law. Code references hereinafter will be to Michie's West Virginia Code of 1955. Strangely enough, after nine years of the operation of this act, this Court has had occasion to construe few of the new provisions. That is true with reference to certain sections which are pertinent to the issues in this case.

Reverting to the question of this collision having occurred within the limits of the City of Beckley, but near the northern boundary of that city, 17C-2-7, is

succinctly in point: "The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and *municipalities* therein and no local authority shall enact or enforce any ordinance, rule, or regulation in conflict with the provisions of this chapter unless expressly authorized herein. Local authorities may, however, *adopt additional traffic regulations* which are not in conflict with the provisions of this chapter." (Italics supplied.) 17C-2-8, authorizes local authorities, with respect to streets and highways under their jurisdiction, and within the reasonable exercise of police power, to regulate "the standing or parking of vehicles." The only ordinance of the City of Beckley to which reference is made in this record is one prohibiting the parking of motor vehicles on the streets of that city for a continuous period of twenty-four hours. It seems clear then that all of the provisions of the Code which are pertinent to a determination of the issues being reviewed in this Court are just as applicable to the highway in question at the point where the collision occurred as they would have been a few hundred feet north after that highway left the city limits of Beckley. It is also clear from this record that the point where this collision occurred was not in a business district, as defined by 17C-1-45, nor a residential district, as defined by 17C-1-46. Defendants' map, Exihibit No. 1, is conclusive on that point. The witness, Jess Williams, a police officer of the City of Beckley, in his answer to a question by counsel, describes the area in which this truck was parked as: "Setting under the bank and the shrubbery and trees, which were on the bank, the light by being hooded as it was seemed to throw the light down into the bed of the truck, and it fused a shadow out over the road, which made it very difficult to see the truck, even the outline of the truck."

Article 13 of Chapter 17C is titled: "Stopping, Standing and Parking." The Court seems to have ignored the first section of that article which is of

particular pertinence, and it reads in part as follows: "(a) Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park, or so leave such vehicle off such part of said highway, * * *." Subsection (b) excepts from this prohibition only the driver of a vehicle which is disabled while on the highway in such a manner that it is impossible to avoid stopping and temporarily leaving the disabled vehicle in such position. As to whether the defendants' truck was parked on a "main-traveled part of the highway", police officer Williams was asked these questions and made these answers:

Q: "Mr. Williams, in addition to Valley Drive being within the corporate limits of the City of Beckley, is it also a state highway?

A: "Yes.

Q: "What highway is it?

A: "Sixteen.

Q: "Mr. Williams, you have described the cement portions of this highway as being four in number, and you have given the width of each of those cement portions. I will ask you now whether or not the entire forty-foot width of the highway is travelled portions of the highway?

A: "Yes."

It is true that this witness and others stated that motor vehicles were often parked in the vicinity of the place where this collision occurred, particularly in front of a church which was approximately two or three hundred feet north of the scene of the collision, and on the opposite side of the highway, but, if the statute prohibited parking in that area, these defendants could acquire no prescriptive right to violate such statute because others had done so.

Furthermore, I am of the opinion that it was not error to give Plaintiff's Instruction No. 9. It is quoted

in full in the majority opinion and will not be again quoted here. This instruction follows the language of 17C-15-15, which provides that when a vehicle is parked upon a road, or shoulder adjacent thereto, during the hours between a half hour after sunset and a half hour before sunrise, and there is not sufficient light to reveal a person or object within a distance of five hundred feet upon such highway, the vehicle must be equipped with lamps which shall exhibit a white light visible for five hundred feet to the front, and a red light visible from a distance of five hundred feet to the rear of such vehicle. There is no denial in the testimony that this collision occurred more than a half hour after sunset; that there were no lights front or rear being exhibited on the truck, and the evidence was overwhelming, if not uncontradicted, to the effect that at the time of the collision, and very shortly thereafter, the illumination from the hooded 189 watt street light was not sufficient "to render clearly discernible persons and vehicles on the highway at a distance of five hundred feet." However, this Court in deciding this case has, by some complex reasoning that I cannot follow, "amended", or perhaps "repealed", this section. It is the decision of the Court that I am complaining of, and not the opinion which carefully follows the decision in this regard and otherwise.

This is the reasoning by which the Court permitted these defendants to escape the liability imposed by this section: It read 17C-15-15, entitled "Equipment", in pari materia with 17C-15-2 and 17C-15-3, the titles of which are, respectively: "When Lighted Lamps Are Required" and "Visibility Distance And Mounted Height Of Lamps". 17C-15-2, provides that during the hours of darkness vehicles on the highways shall have lights that are visible for a distance of five hundred feet. 17C-15-3, provides that lights shall be of a type and brightness to be visible for a distance of five hundred feet upon a straight, level highway under normal atmospheric conditions. The Court concludes

that these two sections qualify the meaning of 17C-15-15, to the extent that if visibility is reduced by fog, or snow, or rain, or other adverse atmospheric conditions, to the point where lights of a parked vehicle cannot be seen for a distance of five hundred feet, it is unnecessary to turn them on at all. Furthermore, it extends this reasoning to the illumination cast by the street lights, and holds that if this truck could have been seen for a distance of five hundred feet under normal atmospheric conditions by the glow cast from the street lights, if adverse weather conditions reduced vision to less than five hundred feet, then the defendants were justified in not having lights on their parked vehicle.

The State of Washington has a statute identical with the provisions of 17C-15-15. It was construed by the Supreme Court of that state in *Rowe et ux. v. Safeway Stores, Inc., et al.,* 14 Wash. 2d. 363, 128 Pac. 293. The driver of a truck while travelling within the city limits of Olympia encountered fog which reduced visibility to about forty feet. He pulled his vehicle upon the gravel adjoining the paved street because of difficulty in driving with such reduced visibility, but the body of the truck extended about eight feet upon the pavement. The driver of a passenger vehicle proceeding at about fourteen miles an hour struck the rear of the truck injuring his wife, the plaintiff, who was a passenger. An instruction similar to Plaintiff's Instruction No. 9 was refused by the trial court, and the jury returned a verdict for the defendant. Upon a motion to set aside the verdict and grant the plaintiff a new trial, the trial judge ruled that he had committed error in not giving this instruction and granted the motion. In this action, he was affirmed by the Supreme Court of Washington. The court said in part, in holding that plaintiffs were entitled to an instruction substantially in the language of the statute: ''No issue was raised at the trial as to whether or not appellants' trailer tail light was of sufficient brightness or intensity to meet the statu-

tory requirement. The only conflict in the testimony on that phase of the case was as to whether the tail light was on or off. The jury should have been instructed that the law required it to be on. Nor do we think that the jurors would have been misled by the form of the requested instruction. Surely, we should not assume that they would have been so stupidly impractical as to conclude that the language of the statute embodied in the proposed instruction requires motor vehicles to be equipped with tail lights capable of being seen from a point five hundred feet to the rear under all conditions, regardless of intervening physical obstacles to light, such as fog, falling snow, or other vehicles traveling on the highway.'' I have no comment as to the interpretation which the majority of this Court have placed upon the *Rowe* case, except to say that I do not agree with their conclusion regarding that decision.

As stated in the Court's opinion, the declaration in this case is in three counts, and, in addition to charging the defendants with negligence by way of the violation of certain statutes, charges them as well with ''common law'' negligence. Pursuant to the latter allegation of negligence, the trial court gave Plaintiff's Instruction No. 7, not criticized in the majority opinion, which reads as follows: ''The Court instructs the jury that if you believe from the evidence that the defendants, Penn Line Service, Inc., a corporation, and J. W. Hosey, parked the truck in question in or at the end of a curve in the highway, in such manner that it obstructed a traveled portion of said highway, and that they allowed it to remain in that position during the hours of darkness, and in prevailing conditions of fog or rain which were such as to limit the visibility of other motorists using said highway, and if you believe that a reasonably prudent person would have anticipated that that situation would create a danger to the safety of such other motorists, then those defendants were guilty of negligence, and if you believe that such negligence was the proximate

cause of plaintiff's injuries, you should find for Flora Robinson against those defendants, unless Flora Robinson and [sic] guilty of negligence.'' The evidence, in my opinion, fully justified the giving of this instruction, and the verdict of the jury for the plaintiff against these two defendants, assuming that there was no statutory violation which in this jurisdiction is prima facie evidence of negligence. The majority of the states hold such violation to be negligence per se.

Briefly, these are the facts which, in my view of the record, support the verdict, assuming no statutory violation: The defendant Hosey was in charge of the truck for the Penn Line Service, Inc., a Pennsylvania Corporation. He found the weather so adverse on the morning preceding this collision that he and his men were unable to work upon the contract which his employer had, and in which these men had been engaged for a considerable length of time in Raleigh County. It appears from the record that the truck had usually been stored at night at a gasoline service station several hundred feet north of the point of the collision, and I think the inference is clear that, because Hosey purchased gasoline and had the truck serviced at this station, he was allowed to park on their lot without charge. On this particular morning, however, the lot was full and Hosey found it necessary to find another place to ''store'' the vehicle until seven or eight o'clock the following morning when the men would resume their work if the weather permitted. Hosey and his associates decided to return to their homes in the neighboring county of Summers to spend the day and night. Instead of taking the truck to a garage or parking lot, he parked it at about ten o'clock in the morning of that day at the place where the collision occurred about eight or nine hours later. One of the other men drove a passenger car to the place where the truck was parked, and from there they went to the vicinity of Hinton, in Summers County, returning at about eight o'clock the following morning to find the collision had occurred

in their absence. The evidence is clear to me, as it must have been to the jury, that Hosey chose about the most hazardous place on Valley Drive to park the truck. He parked the truck near the end of a right-hand curve, as the highway is viewed from the City of Beckley toward the north, and at a point where the vision of motorists travelling in that direction is limited by the only building in the immediate vicinity, on the right-hand side of the highway, which is a garage apartment building close to the right-hand side of the road. While he parked the truck under a street light containing a 189 watt bulb, the evidence of the police officer, which has heretofore been quoted, shows the inadequacy of the light which was thrown into the bed of the truck and "fused a shadow out over the road, which made it very difficult to see the truck, even the outline of the truck." The uncontradicted testimony of a witness who measured the truck shows that it was seven feet and eleven inches wide, which is one inch short of the maximum width permitted by statute in this State. As stated in the majority opinion, there was a tool box on the *left side* of the truck "containing pruning poles attached to and extending a distance of ten inches from the left side of the body of the truck along most of the bed." However, by viewing Defendants' Exhibit No. 7, which admittedly does not purport to portray the truck in the position in which it was parked at the time of the accident, it is stated in the majority opinion that the tool box was set on a ledge of the bed of the truck in such a manner that it was *practically* all within the slight overlap at the left side of the rear wheels. Three eleven foot poles contained in this tool box were broken by the collision, and it seems clear that a piece of wood subsequently taken from behind the left eye of the plaintiff, and which is an exhibit, came from one of these broken poles. Witnesses found a broken pole near the scene of the collision soon after it occurred. The defendant Hosey says he found three broken poles when he returned to his truck the following morning. In view of the state of the weather

on the day Hosey parked the truck, the time of the year being February, and his knowledge of the climate in that area in the winter season, it is my view of this case that the jury was justified in finding that a reasonably prudent man should have foreseen that one of the thousands of motorists, who would pass that way during the day and night while the truck was parked, without lights, might collide with it and cause injury to the driver or a passenger in such vehicle. Particularly is this so in view of the fact that the truck was an outsize vehicle, extending in width perhaps two feet beyond what could reasonably be expected.

If I understand the Court's position with reference to proximate cause, and its application to the facts in this case, it is my opinion that, without saying so, the Court has overruled several of its previous decisions. In the opinion, the Court said: "* * * It will be seen from the authorities cited in cases similar to the one presented here that even though the parking of the vehicle by the defendants violated the statute, or if they were guilty of common law negligence in so parking, there can be no recovery where an automobile runs into a parked vehicle, because the sole proximate cause of such accident is the driving of the automobile into the parked vehicle when the driver saw or should have seen the parked vehicle.", and further, the Court said: "* * * The negligent act, without which the injury to the plaintiff would not have resulted, was the driving of the vehicle in which the plaintiff was riding into the rear of the parked truck of Penn Line Service, Inc., and this was clearly the sole proximate cause of the accident in this case. * * *" Proximate cause is an elastic and mystical term that is meaningless unless it is applied to the facts of a particular case. While this Court has held that the proximate cause of an injury is the last negligent act contributing thereto without which such injury would not have occurred, it is well settled in this jurisdiction that where injury or wrongful death results from the concurring negligence of two parties

which, though independent of each other, when combined results in injury to or death of a third party, recovery may be had against either or all. *Roush v. Johnson,* 139 W. Va. 607, 80 S. E. 2d. 857. Many cases are cited therein in support of that principle, but the *Roush* case is interesting in that the negligent acts of the two defendants, which this Court held continued unbroken to the instant of the injury, occurred more than one year apart. I have found no case in this jurisdiction in which a plaintiff, a guest passenger in an automobile, injured as a result of a collision between his vehicle and a parked vehicle, was denied recovery on the ground that the sole proximate cause of his injury was the negligence of his driver. The rule laid down by this Court in the *Roush* case and *Wilson v. Edwards, et al.,* 138 W. Va. 613, 77 S. E. 2d. 164, both having been recently decided, as to concurrent negligence where a plaintiff has charged two or more persons with responsibility in an action of tort, clearly represents the majority view in this country.

In 38 Am. Jur., Negligence, § 64, the majority, if not almost the universal, view is stated: "In an action for injury alleged to be due to a neglect of duty on the part of the defendant, it is no defense that a similar duty rested upon another person. The negligence of one person is in no sense justified by the concurring negligence of another. In other words, where a defendant is guilty of negligence causing an injury, and the plaintiff is free of negligence contributing thereto, the fact that the negligence of a third person, who was not acting under the direction and control of the plaintiff, concurred with the defendant's negligence does not relieve the defendant from liability for his negligence, provided the negligence of the defendant was an efficient cause, without which the injury would not have occurred. * * * " "* * * The rule is that when an injury occurs through the concurrent negligence of two persons, and it would not have happened in the absence of the negligence of either per-

son, the negligence of each of the wrongdoers will be deemed a proximate cause of the injury, although they may have acted independently of one another; and both are answerable, jointly or severally, to the same extent as though the injury were caused by his negligence alone, without reference to which one was guilty of the last act of negligence. * * *"

In 21 A.L.R. 2d., at Page 95, begins an annotation entitled: "Parked Automobile—Lights.", and in the following one hundred and ten pages are cited innumerable cases in which recovery was had by a guest passenger, or, in some instances, by the operator of an automobile which collided with a vehicle parked on a public street or highway in the nighttime without displaying lights. However, to support its finding that, even though the defendants were guilty of negligence, such negligence was remote and the "intervening, efficient cause of the injury was the driving of the Canterbury car into the rear of defendants' truck, * * *.", the Court cited *C. & O. Ry. Co. v. Hartwell,* 142 W. Va. 318, 95 S. E. 2d. 462; *Hartley v. Crede,* 140 W. Va. 133, 82 S. E. 2d. 672; *Webb v. Sessler,* 135 W. Va. 341, 63 S. E. 2d. 65; *Scott v. Engineering Co.,* 117 W. Va. 395, 185 S. E. 553; and the Virginia case of *Hubbard v. Murray,* 3 S. E. 2d. 397. In none of these cases was the plaintiff a guest passenger in an automobile which collided with another vehicle, and all are distinguishable on their facts from the instant case. However, they are tort actions and the citing of them in this case calls for a brief review of the position of this Court in cases where a plaintiff charges two or more defendants with negligent acts causing injury to the plaintiff.

The declaration in the *Webb* case charged the operators of an airport, the pilot of an airplane and other defendants with negligence in causing the death of plaintiff's decedent while lawfully parked in an automobile near the airport. The declaration alleged that the airport was built too near the highway in violation of Federal statutes, and that the pilot was negligent

in the operation of his airplane. This Court affirmed the action of the trial court in sustaining the demurrers of all of the defendants, except Lilly, the pilot of the airplane, upon the ground that the alleged acts of negligence of those defendants "are relegated to the position of being remote causes of the injury, and, therefore, do not constitute actionable negligence." The 2nd. Syllabus Point reads: "The proximate cause of an injury is the last negligent act contributing thereto, without which the injury would not have resulted."

In the *Hartwell* case, there were only two parties, the Railway Company and Hartwell, instituting counteractions of trespass on the case. The 2nd. Syllabus Point in the *Webb* case is quoted as the 3rd. Syllabus Point in the *Hartwell* case, and in the opinion is this statement: "* * * Therefore, we arrive at the inescapable conclusion that the last efficient proximate cause of the collision was the negligence of Irene Hartwell in driving her automobile off the crossing on the main lines of the railroad company. * * * "

But consider the rule laid down in *Snyder v. Philadelphia Company*, 54 W. Va. 149, 46 S. E. 366, in which the plaintiff was injured, while driving his team of horses pulling a wagon loaded with baled hay, when the horses were frightened when an employee of the defendant company opened a valve of a pipe permitting gas to escape and thereby produced a loud hissing noise. The evidence showed that plaintiff also was negligent in driving his horses with a defective rein. A judgment in favor of the plaintiff was affirmed by this Court. The Court said in the opinion: "The proximate cause is not always that which is nearest in time or place to the injury. The meaning of the maxim, *causa proxima non remota spectatur* is that the true cause of an injury is that which brings it about either by direct operation or by setting in motion other causes as instruments or agents operating under its dominant influence. * * *", and, quoting Phillips on Insurance, § 1132; "In case of the con-

currence of different causes, to one of which it is necessary to attribute the loss, it is to be attributed to the efficient predominating peril, whether it is or is not in activity at the consummation of the disaster." Whether the rule in the *Webb* case, and those cases that have followed its reasoning, can be distinguished from the *Snyder* case; whether the *Wilson* and *Roush* cases can be distinguished from the *Webb* case; and whether the instant case can be distinguished from the *Wilson* and *Roush* cases; are certain to become matters of speculation by the bench and bar of this State.

In March, 1956, this Court decided the case of *Walker v. Robertson*, 141 W. Va. 563, 91 S. E. 2d. 468, the 5th Syllabus Point of which reads: "Concurring negligence relates to persons occupying the position of defendants and 'Arises where the injury is approximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently.' Black's Law Dictionary, Fourth Edition, Page 1185."

*Scott v. Engineering Co.*, 117 W. Va. 395, 185 S. E. 553, is not in point. The defendant wrongfully parked his truck on the highway, and the plaintiff, without keeping a proper lookout, ran into it and got judgment for damage to his automobile. The judgment was reversed by this Court for the reason that the plaintiff, as the Court said in the opinion, was guilty of negligence as a matter of law in driving to within thirty feet of the parked truck without observing it, when he admitted in his testimony that if he had been looking he could have seen the truck at a distance of one hundred and fifty feet. It was a simple case of contributory negligence, but in the opinion the Court describes it as: "* * * a happening distinctly intervening between the negligence of the defendant and the accident, without which the accident would not have happened. * * *" The opinion further states: "* * * That negligence, having appreciably followed that of the defendant in point of time, was the inde-

pendent efficient, or proximate, cause of the damage to the plaintiff's car. * * *''

*Hubbard v. Murray,* 173 Va. 448, 3 S. E. 2d. 397, is a case in which plaintiff's decedent was killed by the alleged concurring negligence of the operators of a bus and a truck. The bus stopped at a place prohibited by statute, and the truck driver, observing that situation, had time to avoid a collision, but his brakes failed to hold and he collided with bus, glanced off, and ran into an oncoming automobile killing plaintiff's decedent. This case is cited in 131 A.L.R., Page 565, under an annotation: ''Stopping On Highway—Collision'', and a careful perusal of the other cases there cited shows that they may be distinguished from the instant case upon their facts. The case cited therein immediately following *Hubbard v. Murray* is *Geisen v. Luce,* 185 Minn. 479, 242 N.W. 8, in which it was held that, though the leaving of a disabled car on a highway was unlawful, a guest passenger in the car which collided with it could not recover against the owner of the disabled car where the accident was due to the negligence of the passenger's driver in driving ''at such a reckless and excessive rate of speed that he was forced to the shoulder to avoid striking defendant's standing car.'' However, beginning on Page 605 of the same annotation are cited many cases in which it was held that both the owner of the parked car and the driver or owner of the car which ran into it were concurrently negligent, and both would be liable in a proper case to a guest passenger in the car which collided with the parked vehicle.

The North Carolina case of *Godwin v. Nixon,* 236 N.C. 632, 74 S. E. 2d. 24, relied on strongly by the Court in its opinion, also falls within one of two lines of decisions by the North Carolina Court, one holding that the sole proximate cause of such a collision is the negligence of the driver of the vehicle which collided with the parked vehicle, and the other line to the exact contrary. For a partial citation of the cases representing both views see *Smith v. Grubb, et al.,* 238

N.C. 665, 78 S. E. 2d. 598. This seeming discrepancy may be resolved by reference to the opinion in *Garner v. Pittman*, 237 N.C. 328, 75 S. E. 2d. 111, wherein the court approves the proposition that, where the facts are undisputed and but one inference may be drawn from them, it is within the exclusive province of the court to determine whether the injury resulted from the negligence of one or the concurrent negligence of both of the parties.

Without attempting to review the innumerable cases upon this question, but most of which may be found in the citations contained in this dissenting opinion, it is my opinion that upon the facts of the instant case the Court has placed it in the wrong category when it is placed with those cases which hold that the negligence of the driver of the car colliding with the parked vehicle is "an intervening and efficient cause without which the collision would not have occurred.", or that the negligence of the driver of the parked vehicle is "so remote" as not to have been a proximate cause of plaintiff's injuries as a matter of law. A.L.R. Supplement Service, Vol. 2, p. 1809, 1812.

The recent decision of this Court of *Wilson, Administratrix v. Edwards, et al.*, 138 W. Va. 613, 77 S. E. 2d. 164, is controlling upon this question in my opinion, and is in accord with the great weight of authority in other jurisdictions. Briefly, these were the facts in the *Edwards* case: Corbin was the driver of a truck, owned by Edwards, who parked it on the berm of a highway at the end of a curve near his residence at 7:15 P. M., and went to his residence nearby and retired for the night. At about 11:30 o'clock the same night, plaintiff's decedent, riding in a passenger vehicle with Simmons, was fatally injured when Simmons, travelling around the curve at such speed that he went onto the berm, collided with the parked truck. Shortly before, and to the knowledge of his guest passenger, Simmons had had a drink of whiskey and a glass of beer. This Court had no difficulty in sustaining a jury verdict against Edwards and Corbin,

there being such a verdict also against Simmons, but application was not made by him for a writ of error. This is the 3rd. Syllabus Point of that case: ''Separate and distinct acts of negligence of two or more persons constitute the proximate cause of an injury when they continue in unbroken sequence until the injury occurs and directly and immediately contribute to and are the efficient cause of the injury.''

In the even more recent case of *Wolfe v. Beatty Motor Express, Inc., et al.*, 143 W. Va. 238, 101 S. E. 2d. 81, this Court upheld on writ of error the action of the trial court in directing a verdict for the defendants, upon the ground that the conduct of the plaintiff in driving his vehicle into a trailer truck parked on the highway in darkness barred his recovery since his negligence contributed proximately to his injuries. The evidence showed that the trailer truck was parked on the surface part of the highway, but ''as close to the curb as it could safely set.'' The trailer truck was left in that position while the driver went into a gasoline service station to buy fuses and a bulb. While the plaintiff, who was the driver of the colliding vehicle, was denied recovery, the Court had this to say about the conduct of the driver of the trailer truck: ''The evidence clearly shows that the driver of the tractor-trailer was guilty of negligence in leaving his vehicle upon the paved portion of the highway, under the circumstances, and for the length of time related by the witnesses. That evidence establishes also that such negligence was a proximate cause of the injury to the plaintiff. No further reference need be made to that phase of the case. It is not enough, however, that the defendants' negligence was a proximate cause of the injury to the plaintiff. It must have been the sole proximate cause. This Court has not recognized the rule of comparative negligence. Therefore, we are not at liberty to determine whether the negligence of the defendants was greater or less than that of the plaintiff, if the latter was negligent. * * *''

*Darling v. Browning, et al.*, 120 W. Va. 666, 200

S. E. 737, and *Porterfield v. Suddeth,* 117 W. Va. 231, 185 S. E. 209, are cases in which jury verdicts were upheld on writ of error by this Court in favor of guest passengers riding in automobiles which collided with trucks of the defendants "unlawfully" parked on city streets.

In *Divita v. Atlantic Trucking Company,* 129 W. Va. 267, 40 S. E. 2d. 324, a passenger was denied recovery when injured by the collision of the vehicle in which he was riding with a truck "unlawfully" parked on a city street only because he was the owner of the vehicle in which he was riding, and his driver's negligence was imputed to him.

It is interesting to note that all of those cases were decided prior to the enactment of Chapter 129, Acts of the Legislature, Regular Session, 1951, and at a time when the statute law of this State excluded the limits of municipalities from the prohibition against the parking of vehicles on the highway. In no similar case has this Court invoked the rule of "intervening acts of negligence", or that the negligence of the plaintiff's driver "superseded the negligence" of the defendants, or denied the plaintiff recovery because of the "remoteness" of the defendants' negligence. To emphasize the Court's departure, in the instant case, from the principles enunciated in those decisions, it may be noted that, the only reason why the defendant herein may not recover for the damage occasioned to its truck and equipment is that it failed to institute an action therefor. Reverting to the *Edwards* case, this Court rejected the contention of the plaintiff in error that the parking of the truck without lights was not a proximate cause of the fatal injury, and that: "* * * the proximate cause of his injury was the negligence of the defendant Simmons in driving the automobile against the stationary truck which, as an intervening independent act, superseded any negligence of the defendant Corbin, * * *."

While the Court does not specifically so hold, it intimates in its opinion that if the plaintiff were

otherwise entitled to a recovery, she might be barred therefrom by her contributory negligence. It would be difficult to reach such a conclusion without overruling the decisions of this Court in *Darling v. Browning, et al.,* 120 W. Va. 666, 200 S. E. 737, and *Porterfield v. Suddeth,* 117 W. Va. 231, 185 S. E. 209. In the opinion in the *Suddeth* case, the Court said: "Was the plaintiff guilty of contributory negligence as a matter of law? We think not. Whether a passenger riding in an automobile driven by another exercises such care for his own safety as a reasonably prudent person would take under like circumstances, is generally a question of fact for the jury. * * *. The mere fact that the passenger is the wife of the driver does not change the formula. * * * . The rule applies in case of injury to a passenger resulting from a collision between the car in which he is riding and a motor vehicle standing on a highway without lights in smoke, fog, dust, mist or darkness. * * *'' In the *Browning* case, the Court, referring to the rule that a guest passenger, who fails to protest the action of the driver in encountering a possible danger reasonably apparent to both, is ordinarily barred from recovery against the host, said: "This rule is meant to apply where there was an obvious or highly probable danger in the manner or circumstances of the operation of an automobile in which a guest was riding at the time of injury received. * * * " The majority has rejected, without cause or explanation, the testimony of the driver of, and passengers in, the Canterbury automobile as well as other witnesses who testified for the plaintiff. The inferences favorable to the plaintiff to be drawn from the testimony by virtue of the verdict in her favor are ignored. The jury box, from which laymen flee in terror, sometimes holds a strange fascination for appellate judges.

In *Yuncke v. Welker,* 128 W. Va. 299, 36 S. E. 2d. 410, many decisions of this Court are cited in support of certain principles about which I trust there can be no dispute. Questions of negligence and contributory

negligence are for the jury; to weigh the evidence and to resolve questions of fact when the oral testimony of witnesses regarding them is conflicting is peculiarly the province of the jury and should not be disturbed by the Court; the jury are the sole judges of the credibility and the value of conflicting testimony of witnesses; and where the facts are controverted the question of negligence is for jury determination.

I would affirm the judgment of the Circuit Court of Raleigh County entered upon the jury verdict for the plaintiff.